THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JOHN WILLIAMS, Defendant.

Court of General Sessions of County of New York, July 5, 1944.

*Alexander I. Rorke, Le Roy Campbell* and *Stanley S. Katzenstein* for defendant.

*Frank S. Hogan*, District Attorney (*Alexander Herman* of counsel), for plaintiff.

SCHURMAN, J. In this motion for permission to inspect the Grand Jury minutes, defendant suggests that a proper case exists for the exercise by the court of its power, under section

671 of the Code of Criminal Procedure, to dismiss the indictment in furtherance of justice.

In 1943 the defendant was indicted, charged with the crime of murder in the first degree for willfully, feloniously and of malice aforethought striking and killing Aslee Edmond with a knife. He was tried, convicted and sentenced to the punishment of death.

At the trial, Emilio Funicello and Arthur James, two convicts under long prison sentences but sojourning in the house of detention, testified for the prosecution regarding oral admissions of guilt claimed to have been made to them by the defendant while he was in custody awaiting trial. They were experienced witnesses in matters of this sort and had given similar testimony, acquired under like circumstances, against other defendants in previous cases.

The trial court instructed the jury to acquit the defendant unless they believed either Funicello or James. The jury convicted.

Defendant appealed and, in 1944, the Court of Appeals reversed the judgment of conviction. (*People* v. *Williams*, 292 N. Y. 297.)

On appeal (292 N. Y. 297, 300) the first question presented to the court was whether the testimony of Funicello and James was of such weight and credibility as to convince the court that the jury was justified in finding the defendant guilty beyond a reasonable doubt.

After considering these witnesses and examining their testimony and pointing out that they had testified in other cases to oral admissions and were seasoned reporters of high criminal guilt, the court felt compelled to reject their testimony in its entirety.

The question now arises of the effect of this rejection and of the results that flow from it as between this defendant and the State.

The Court of Appeals has weighed the testimony of James and Funicello and concluded that it was insufficient. (*People* v. *Crum*, 272 N. Y. 348, 349, 350.) The pronouncement of that court on this subject is a finality. As between the People of the State and this defendant, the testimony is nullified and cannot further avail the prosecution. Such is the rule of estoppel in criminal law akin to *res judicata*. (See charge of Mr. Justice SEABURY in *People* v. *Harris*, N. Y. L. J., Mar. 22, 1912, p. 2857, col. 1; *Res Judicata with Respect to Criminal Judgments*, N. Y. L. J., Dec. 18, 1939, p. 2194, col. 1;

*Frank* v. *Mangum,* 237 U. S. 309, 333, 334; *United States* v. *Oppenheimer,* 242 U. S. 85.)

The law is well established that evidence supporting an indictment must be both legal and sufficient. Writing on this subject recently, the Court of Appeals said in *People* v. *Nitzberg* (289 N. Y. 523, 529) : " No person may be held or tried in this State upon a charge of felony unless that charge is made by the grand jury in an indictment based upon legal and sufficient evidence."

It is therefore appropriate to consider the evidence underlying the indictment on which this defendant is now held.

The Grand Jury minutes indicate that only five witnesses were produced. These were: Pearl Edmond, a sister of the deceased, who testified having identified the body; Thomas Groce, a police officer, who testified having found the body; Milton Helpern, the assistant medical examiner, who testified having performed an autopsy on the body; Arthur James, the reporter of defendant's alleged confession, whose testimony has been nullified; and Idabelle Williams, a young girl, whose testimony will now be discussed.

She testified she was sixteen; that she recalled the early hours of December 6, 1942, when she left her apartment at 66 West 139th Street to escort a friend to the bus stop on 140th Street; that after her friend took the bus, she stopped at a newsstand to buy a paper and there met a Miss Daisy and that it started to snow so that she returned to 66 West 139th Street.

She then testified as follows: " Q. Now, what happened when you entered premises 66 West 139th Street? A. Miss Daisy went up before I did, and as I went in the hall and I got to the steps, there was a man coming out behind the steps. So I stopped for a minute, because I thought maybe he would try to get fresh. So he was brushing off his coat, and he had some white stuff on it. And I thought maybe it was the stuff, the cement, because thay had cement in the hall before. That's why I stopped. Q. You say you saw this man coming from behind the stairway, is that correct? A. Yes." She identified the defendant as this man.

After thus seeing the defendant, she testified she went upstairs to her apartment and, as she was about to put the key in her door, she heard " a lot of moaning and groaning."

Her testimony on when she first heard the groans follows: " Q. What floor do you live on? A. I live one flight up. Q. When did you hear the groans? A. Right after I came upstairs. I was getting ready to put my key at the door. A Juror: Didn't you

hear them while you saw the·man down there? The Witness:
No, I didn't hear."

She also testified that on hearing the groans she went down-
stairs and found Aslee Edmond behind the steps lying in a
pool of blood; that the police were called and that Aslee Edmond
was dead when they came.

The rule in section 258 of the Code of Criminal Procedure
is that the grand jury ought to find an indictment when all the
evidence before them, taken together, is such as in their judg-
ment would, if unexplained or uncontradicted, warrant a con-
viction by the trial jury. When it appears, however, that the
indictment is founded on evidence which as a matter of law is
insufficient to sustain it, the court has power to set the indict-
ment aside. (*People* v. *Sweeney,* 213 N. Y. 37, 45.)

When the Grand Jury indicted the defendant, it had before
it evidence which in all respects satisfied the requirements of
section 258 of the Code of Criminal Procedure.

Not only was it established that there had been a murder but
the defendant was clearly connected with that crime through
his reported confession to James.

Now, however, the testimony of James is no longer available.
That a murder was committed is still abundantly proven and
grave suspicions certainly attach to the defendant, for he was
seen coming from behind the stairway at about the time Aslee
Edmond must have been stabbed. A suspicious circumstance
is proven from which it is easy to think that the defendant is
guilty. But that is not the test; and if we disregard sound and
well-established rules of law because we think a man guilty
we have taken the first step toward destroying the safeguards
which law has raised for the protection of society. (*People*
v. *Fielding,* 158 N. Y. 542.)

Our statutes have established a standard of proof in criminal
cases, and the proof must conform to that standard before there
can be a lawful conviction. A defendant cannot be convicted
of murder, or any other grade of homicide, whenever there is
merely some evidence, or any evidence, to sustain the charge.
When it is clear that the proof falls below that standard, the
accused is entitled to acquittal as a matter of law. (*People*
v. *Ledwon,* 153 N. Y. 10.) A mere scintilla, or even some
proof, is not sufficient to warrant the submission of the case
to the jury. (*People* v. *Owens,* 148 N. Y. 648.) And it has
been held that mere presence near the scene of a crime is
simply a suspicious circumstance on which the trial court should
advise the jury to acquit. (*People* v. *Cronk,* 40 App. Div. 206.)

Thus without the testimony of James, the degree of evidence supporting the indictment is clearly insufficient.

The conclusion of the court, therefore, is that in furtherance of justice the indictment herein should be dismissed and it is so ordered.