OPINION OF THE COURT
Louis B. Scheinman, J.
This is a motion to dismiss the indictment for legal insufficiency of evidence presented to the Grand Jury. During the pendency of this motion, and in view of the complex issues of law raised, this court made its order on October 31, 1978 *1025 directing the District Attorney to turn over a copy of the Grand Jury minutes to defense counsel "in order that defendant can better conclude the preparation of memoranda for use by this Court on the pending motion.”
The District Attorney requested a stay in order to give him the opportunity to submit a memorandum of law and to reargue the propriety of said order. Said stay was granted and additional memoranda received from both sides.
Although there is no specific statutory authority for the court to direct the turnover of Grand Jury minutes, CPL 190.25 (subd [4]) clearly implies such authority in providing that such proceedings may not be disclosed except "upon written order of the court” nor "without a court order”.
In the case of Proskin v County Ct. of Albany County (30 NY2d 15), involving the propriety of a turnover of Grand Jury minutes, the majority, concurring and dissenting opinions all clearly at least implied, if not more, the power of the motion court to order the furnishing of such relevant minutes for use on a motion to dismiss the indictment for legally insufficient evidence before the Grand Jury.
As stated by this court in its prior decision, there is a very serious and close question as to whether the Grand Jury minutes in this case are legally sufficient to sustain this indictment. The factual background which would point out the complexity of the legal issues is generally as follows: On April 9, 1978 a three and one-half-story frame apartment house in the Village of Monticello burned, as a result of which fire five persons died. The police investigated and subsequently interrogated the defendant who gave them a two-page written statement, which will be referred to herein as a confession. In substance, this confession stated that the defendant had been drinking heavily the evening before the fire. After midnight, intoxicated, the defendant, carrying a bottle of wine, went into the apartment building to visit a friend, evidently on one of the lower stories of the building. Since the friend was not home, the defendant started walking up the steps to the next floor in order to visit another friend. On his way, he sat down on the steps and drank some more wine, then continued walking up the steps and stopped on a landing between the two floors, lit a cigarette and threw the match which landed on some papers, igniting them. He tried to extinguish the fire but could not, then "got scared and went back downstairs and left the building”. He went to his home (evidently a few blocks *1026 away) where he later heard the fire engines, learned of the fire and that people were trapped in the building, dressed and went back to the apartment house to see if he could help the firemen, attempting to do so. His confession further states as follows: Q. "Did you intentionally set the fire?” A. "No, I swear, I didn’t mean it. It happened just the way I told you.”
A police officer with special training in arson investigations testified that, based upon his conversation with two policemen who had been in the building while it was on fire, and from his inspection of the building at the time, that it was his opinion that the fire started in the area at "the top of the stairway, the front stairway and the hallway on the second floor which would be at the top of the stairs.”
The only witnesses who testified before the Grand Jury were a fireman who received the alarm, evidently by telephone, from a tenant who stated that there was a fire in the hallway, another fireman who attended at the fire and made no observations concerning the origin of same, a State Police officer who was in charge of the investigation and said nothing about the origin of the fire, the coroner who identified the deceased persons, the State Police officer who interviewed the defendant and took the confession, and the State Police arson investigator who testified as aforesaid, the only evidence against the defendant being as already described, there being no evidence outside the confession that the fire was of incendiary origin, or by a human agency.
Defendant was indicted April 24, 1978 for five counts of murder under the "depraved indifference” murder statute (Penal Law, § 125.25, subd 2).
It thus can readily be seen that the legal questions on this motion to dismiss the indictment for legally insufficient evidence before the Grand Jury are close and complex.
Firstly, does the evidence before the Grand Jury show the commission of the crimes charged, or any lesser included offenses? A 1937 case, People v Hoffman (162 Misc 677), holds under similar circumstances in the negative.
Secondly, does the corroboration of confessions requirement apply to Grand Jury proceedings? The Second Department, in People v Clarkson (50 AD2d 903) said, in an analogous situation, that corroboration was necessary for conviction, but not a necessary prerequisite for indictment. The First Department seems to so hold in the case of People v King (48 AD2d 457). Yet, our Court of Appeals in People v Mayo (36 NY2d 1002), decided after the adoption of the CPL, in a case dealing with *1027 the sufficieny of Grand Jury minutes, still adhered to the test set forth in former section 251 of the Code of Criminal Procedure to the effect that the evidence before the Grand Jury would be sufficient if, unexplained or uncontradicted upon a trial, it would warrant a conviction by the trial jury. If there is no corroboration of a confession upon a trial, there could be no conviction. Is an indictment based upon an uncorroborated confession based then on legally sufficient evidence? (See, e.g., People v Nitzberg, 289 NY 523, 526.)
Thirdly, if corroboration is required, is there any evidence in the testimony of the witnesses which rises to the level of constituting corroboration? In People v Sims (37 NY2d 906) it was held that testimony of an arson investigator was sufficient for the trial jury to have concluded that the fire was of an incendiary origin, thus satisfying the requirement of corroboration of defendant’s confession. Of course, the issues in that case are distinguishable from those in the case at bar in that Sims was charged with arson, while defendant here is charged with depraved indifference type murder.
In view of what appears to this court to be difficult questions of law, this court would appreciate having knowledgeable briefs from both parties. The purpose of the order furnishing the Grand Jury minutes to the defendant is obviously not for discovery purposes, nor to assist defendant upon a trial, but, instead, as stated in the order of October 31, 1978, in order that defendant could better prepare a brief for the court on this pending motion.
Also, as pointed out in the earlier decision, all of the witnesses before the Grand Jury consisted solely of public servants, and a voluntary fireman, and none of the testimony related to any other possible defendants nor was any of a secret or confidential nature. Since the District Attorney may point to some testimony of one of the witnesses that he might claim to be corroborative of the confession, there is no reason to withhold any of the testimony from defendant.
Accordingly, the application to reargue is granted, and upon such reargument, this court adheres to its determination of October 31, 1978. The People are ordered to furnish a copy of the minutes to defense counsel.
In view of the fact that the People have indicated that they may seek a writ of prohibition, this order will be stayed for five business days in order to allow time for the District Attorney to make such application.