Titone, J.
(concurring in part and dissenting in part). Although I agree that the conviction in this case must be reversed, I cannot concur in the majority’s rationale, which rests not on the State statutory right to be present during "material parts” of the trial (CPL 260.20; see, People ex rel. Bartlam v Murphy, 9 NY2d 550; Maurer v People, 43 NY 1) but rather on the more fundamental right of a defendant to be present, but only in circumstances "where his absence would have a substantial effect on his ability to defend.” (People v Mullen, 44 NY2d 1, 5, citing Snyder v Massachusetts, 291 US 97, 105-106.) Since the latter right has heretofore been treated strictly as an aspect of a defendant’s due process rights under the Federal Constitution (see, People v Mullen, supra, at 5, citing Snyder v Massachusetts, supra; People ex retl. Bartlam v Murphy, supra), I cannot subscribe to an analysis that fails to come to grips with United States v Gagnon (470 US 522) and Rushen v Spain (464 US 114), two recent decisions drastically constricting the scope and effect of the Federal right.* On this record, however, I find no need to set forth in detail my own. independent analysis of the problem addressed by the majority’s writing. In my view, an entirely separate ground for reversal exists because of the trial court’s refusal to dismiss the indictment before trial on the ground that the prosecutor’s legal instructions to the Grand Jury were fatally flawed.
Before the applicable legal principles may be considered, a brief review of the facts underlying the issue is required. The charges against defendant stemmed from a five-man robbery and brutal assault against a middle-aged woman. Although there was some evidence other than accomplice testimony connecting defendant to the crime, this evidence was not ironclad and, consequently, defendant’s identity as one of the perpetrators was clearly one of the factual issues for the Grand Jury to resolve. In this regard, one of the most significant pieces of evidence that were placed before the Grand Jury was a station house statement by defendant in which he admitted to having been present at the scene of the crime. *457 The validity of this bit of evidence was directly called into question, however, by defendant’s own testimony before the Grand Jury concerning the alleged threats of serious violence by police that were used to elicit the station house statement. Despite this controversy over the statement, the prosecutor failed to instruct the Grand Jury on the inadmissibility of statements that are found to be involuntary. This omission was particularly puzzling because the Grand Jury was given clear and adequate instructions on the need for corroboration of accomplice testimony (see, CPL 60.22).
Turning to the applicable legal principles, I begin with People v Calbud, Inc. (49 NY2d 389), in which the standard for reviewing the quality of Grand Jury instructions was discussed. In that case, the court said: "We deem it sufficient if the District Attorney provides the Grand Jury with enough information to enable it intelligently to decide whether a crime has been committed and to determine whether there exists legally sufficient evidence to establish the material elements of the crime.” (Id., at 394-395 [emphasis supplied]; see also, People v Goetz, 68 NY2d 96.) After establishing this relatively lenient standard, the court nonetheless went on to caution that the Grand Jury’s integrity might well be deemed impaired within the meaning of CPL 210.35 (5) "[w]hen the District Attorney’s instructions to the Grand Jury are so incomplete * * * as to substantially undermine [the Grand Jury’s] function” (People v Calbud, Inc., 49 NY2d, at 396, supra). It seems to me that this language is directly applicable here.
It is now beyond dispute that one of the Grand Jury’s fundamental functions is to determine whether there is legally sufficient evidence to support a particular criminal charge (CPL 190.65 [1] [a]; see, People v Batashure, 75 NY2d 306 [decided today]; see also, People v Jennings, 69 NY2d 103, 115). Indeed, in People v Calbud, Inc. (49 NY2d, at 394, supra [emphasis supplied]), the court stated that "[t]he primary function of the Grand Jury in our system is to investigate crimes and determine whether sufficient evidence exists to accuse a citizen of a [particular] crime”. Further, in the first instance, it is the Grand Jury’s exclusive right to determine whether there is "reasonable cause to believe” that the charged crimes were committed by the accused (CPL 190.65 [1] [b]; see, People v Deegan, 69 NY2d 976, 979; People v Jennings, 69 NY2d, at 114-115, supra).
*458 Legally sufficient evidence means "competent evidence which, if accepted as true, would establish every element of an offense charged” (CPL 70.10 [1]). It goes without saying that evidence obtained in violation of the defendant’s constitutional rights is not "competent” evidence within this definition (see, People v Huntley, 15 NY2d 72).
Thus, in order for the Grand Jury to perform its essential function in a case involving a seriously contested confession or admission, that body must be told by its legal advisor, the District Attorney, that the confession or admission cannot be used as part of the People’s direct case if found involuntary (see, People v Valles, 62 NY2d 36, 38 ["(t)he District Attorney is required to instruct the Grand Jury on the law with respect to the matters before it”]). Such an instruction, which is standard fare for petit juries (see, People v Huntley, supra), is necessary to enable the Grand Jury realistically to evaluate the People’s proffered evidence and to determine whether the legal sufficiency standard has been, or can be, satisfied.
Without such an instruction, the Grand Jury cannot properly determine the significance, if any, to be assigned to the testifying defendant’s claims that his statement was coerced. Moreover, in cases where the Grand Jury elects to credit the defendant’s claims of coercion, the absence of a proper instruction deprives the Grand Jury of the all-important knowledge that the sufficiency of the People’s case must now be assessed completely without regard to the statement. The net result is that the Grand Jury’s "essential function” is "substantially undermined,” and "it may fairly be said that the integrity of that body has been impaired”, requiring dismissal under CPL 210.35 (5) (People v Calbud, Inc., supra, at 396).
Finally, the fact that the Huntley hearing court in this case ultimately rejected defendant’s claims and found his station house statement to be voluntary does not cure the defect in the Grand Jury proceedings or otherwise vitiate the need for reversal. The issue here does not concern the sufficiency of the evidence before the Grand Jury or the propriety of admitting defendant’s station house statement — questions which may well be rendered moot by the subsequent determinations of an appropriate fact finder (see, People v Oakley, 28 NY2d 309; People v Valinoti, 26 NY2d 553, 557; People v Nitzberg, 289 NY 523, 529-530). Rather, the dispute concerns an impairment of the process by which the Grand Jury reached its decision to indict. If, as I believe, this process was improperly skewed by *459 the omission of critical legal instructions, then defendant’s basic constitutional right to the intercession of an informed Grand Jury was abridged (NY Const, art I, § 6; see, People v Iannone, 45 NY2d 589), and the strength and/or subsequently determined admissibility of the evidence before the Grand Jury is irrelevant.
For that reason, I vote to reverse the order of the Appellate Division and dismiss the indictment.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander and Hancock, Jr., concur with Judge Bellacosa; Judge Titone concurs in part and dissents in part and votes to reverse and dismiss the indictment in a separate opinion.
Order reversed, etc.

 The Rushen case (464 US 114) is particularly important here because it treated an in camera inquiry conducted in the absence of the defendant and defense counsel as subject to harmless error analysis.