**Michael ROBERTS, Petitioner,**

v.

**Charles J. SCULLY, Warden, Green Haven Correctional Facility, Respondent.**

**No. 91 Civ. 2484 (MJL).**

United States District Court, S.D. New York.

Jan. 6, 1995.

Magda S. Vives, Asst. Dist. Atty., Bronx County, New York City, for respondent.

Petitioner pro se.

## ORDER

KIMBA M. WOOD, District Judge.

This petition for a writ of habeas corpus was originally filed before Judge Mary Johnson Lowe who, on March 18, 1993, referred it to Magistrate Judge Dolinger for a Report and Recommendation. In a Report dated October 15, 1993, the Magistrate Judge recommended that the court deny Michael Robert's petition for a writ of habeas corpus. Petitioner, appearing *pro se*, filed timely objections, to which no response was filed. The case subsequently was transferred to this court on December 15, 1993.

Petitioner was arrested on January 29, 1987, and charged with entering the Bronx apartment of Clarence White and Vilma White with the intent to steal money and property. Petitioner was convicted of second degree burglary, in violation of N.Y.Penal Law § 140.25, and was sentenced to fifteen years to life in prison. In April of 1991, petitioner first sought a writ of habeas corpus in federal court, arguing the following five grounds for relief: (1) the trial court improperly excluded evidence of an altercation between Mr. White and a person named "Tommy," in violation of petitioner's right to present his defense; (2) the trial court improperly refused to allow petitioner to cross-examine Mrs. White concerning her knowledge of her husband's nearly twenty year old narcotics conviction—again in violation of petitioner's right to present his defense; (3) the court erred in admitting Mrs. White's eyewitness identification at trial because the prosecution did not comply with the notice requirements set forth under New York State law, and because the actual identification was unduly suggestive; (4) the indictment was impermissibly vague and was improperly presented to the grand jury; (5) petitioner received constitutionally ineffective assistance of counsel.

After a *de novo* review of the Report and of petitioner's objections, I adopt Magistrate Judge Dolinger's recommendation to dismiss the petition for substantially the same reasons contained in his Report.

With respect to petitioner's claims regarding the trial judge's evidentiary rulings, I agree with the Magistrate Judge's conclusion that a trial court's decision to exclude portions of a defendant's proffered evidence can implicate the Fourteenth and Sixth Amendments, even when the judge's ruling is cast in terms of state evidentiary law. *See Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 2146–47, 90 L.Ed.2d 636 (1986) (observing that "an essential component of procedural fairness is an opportunity to be heard"); *accord Rosario v. Kuhlman,* 839 F.2d 918, 924 (2d Cir.1988). Moreover, I agree that petitioner's pleadings should be construed to raise this Constitutional claim. However, I also agree with the Magistrate Judge's conclusion that in this case, petitioner was not denied the opportunity to present evidence that was *material* to his defense. *See Unit-*

ed States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (noting that "only if the omitted evidence creates a reasonable doubt that did not otherwise exist" has a constitutional error occurred); cf. United States v. Almonte, 956 F.2d 27, 30 (2d Cir. 1992).

With respect to the trial judge's decision to admit the eyewitness identification of petitioner, I agree with the Magistrate Judge's conclusion that any error was harmless. See Brecht v. Abrahamson, —— U.S. ——, —— – ——, 113 S.Ct. 1710, 1717–19, 123 L.Ed.2d 353 (1993). That is, assuming arguendo that the judge improperly admitted the eyewitness identification, I agree that because petitioner's defense was not one of mistaken identity, petitioner cannot claim "that the error had substantial and injurious effect or influence in determining the jury's verdict." Id.

I also concur in the Magistrate Judge's determination that petitioner's claims regarding the inadequacy of the indictment and the improper submission of the defective indictment to the grand jury are procedurally barred, and that the court may raise this bar sua sponte in spite of respondent's failure to do so. Washington v. James, 996 F.2d 1442, 1448–51 (2d Cir.1993), cert. denied, —— U.S. ——, 114 S.Ct. 895, 127 L.Ed.2d 87 (1994). Specifically, I find that the state courts rejected petitioner's N.Y.Crim.Proc.L. § 440.10 motions regarding the constitutionality of the indictment solely pursuant to Crim.Proc.L. § 440.10(3)(a); therefore, the state courts relied on an adequate and independent state procedural ground in denying petitioner relief. See Coleman v. Thompson, 501 U.S. 722, 738–40, 111 S.Ct. 2546, 2559, 115 L.Ed.2d 640 (1991); Wedra v. LeFevre, 988 F.2d 334, 338–39 (2nd Cir.1993). Furthermore I agree that petitioner has not shown cause for the procedural default, or that a miscarriage of justice would result if this court declined to hear his barred claim. See

Murray v. Carrier, 477 U.S. 478, 495–96, 106 S.Ct. 2639, 2649–50, 91 L.Ed.2d 397 (1986).[1]

Finally, I agree with the Magistrate Judge's determination that petitioner's claim of ineffective assistance of counsel is without merit for the reasons detailed in his Report. See Report and Recommendation, pp. 194–96.

Accordingly, I adopt Magistrate Judge Dolinger's Report and Recommendation, and the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.

SO ORDERED.

### REPORT AND RECOMMENDATION

DOLINGER, United States Magistrate Judge.

Pro se petitioner Michael Roberts seeks a writ of habeas corpus to challenge his 1987 conviction in New York State Supreme Court, Bronx County, on a charge of Burglary in the Second Degree. Petitioner is serving a prison term of fifteen years to life on this conviction.

In his petition, Roberts originally asserted five enumerated grounds for relief, one of which encompassed multiple claims that had previously been raised on two state court post-appeal motions to vacate his conviction. By Opinion and Order filed June 17, 1992, the District Court found that petitioner had failed to exhaust available state court remedies with respect to his third and fourth claims, which challenged, respectively, one aspect of the trial court's jury instructions and the court's refusal to grant a hearing on his motion to suppress eyewitness identification testimony. Accordingly, the District Court denied petitioner's application for appointment of counsel and directed petitioner to withdraw the unexhausted claims or face dismissal without prejudice of the entire petition. (See Opinion & Order at 8–13.)

---

1. The Magistrate Judge properly determined that even were the court to overlook the procedural bar, it would still dismiss petitioner's indictment-related claims on their merits. See Lopez v. Riley, 865 F.2d 30, 31 (2d Cir.1989) (holding that claims regarding the sufficiency of the evidence before the state grand jury may not be raised on

habeas "where a properly instructed petit jury heard all relevant evidence and convicted"); United States ex rel. Mintzer v. Dros, 403 F.2d 42, 43 (2d Cir.1967), cert. denied, 390 U.S. 1044, 88 S.Ct. 1643, 20 L.Ed.2d 305 (1968) (holding that insufficiency of indictment is not a basis for habeas relief).

In response to this decision, petitioner filed a "Motion to Amend," in which he sought leave to delete the third and fourth claims. Based on that amendment, the District Court permitted Roberts to proceed with the balance of his petition (*see* Order dated June 31, 1992), and subsequently referred the petition to me for a Report and Recommendation. (*See* Order dated March 11, 1993.)

For the reasons that follow, I recommend that the writ be denied and the petition dismissed with prejudice.

## A. *Petitioner's Current Claims*

Petitioner now asserts, in substance, eight claims. First, he challenges a ruling by the trial court precluding testimony by him that would assertedly have established bias on the part of the complaining witness. Second, he attacks a ruling by the trial court precluding his counsel from cross-examining the wife of the complaining witness concerning her possible knowledge of her husband's earlier narcotics conviction. Third, petitioner in effect reiterates all of the grounds that he had previously raised on two motions filed in state court under N.Y.Crim.Proc.L. § 440.10 to vacate the conviction. In the course of these two motions, petitioner argued that the prosecutor had improperly resubmitted to the grand jury an as-yet unfiled indictment in order to elicit additional evidence, that the evidence presented to the grand jury was insufficient to justify indictment, that the prosecutor had engaged in misconduct before the grand jury, that the indictment was facially insufficient, that the prosecutor had violated Crim.Proc.L. § 710.30 by failing to give timely notice that the State would call two witnesses to give identification testimony, and that petitioner had been denied effective assistance of trial counsel.

## B. *Prior Proceedings*

Petitioner's current predicament is an outgrowth of events that occurred on January 29, 1987, when he was arrested for having allegedly entered the Bronx apartment of Mr. Clarence White and Ms. Vilma Escobar for the purpose of stealing money and property. Roberts was indicted on one count of Burglary in the Second Degree, one count of Petit Larceny, and one count of Criminal Possession of Stolen Property in the Fifth Degree.

Petitioner's trial began on December 8, 1987 before the Hon. George Covington and a jury. At trial, both Mr. White and Ms. Escobar[1] testified that on the evening of January 29, 1987, they and their ten-year-old son had locked the apartment and gone to dinner. (Tr. 30A–32A[2], 56, 78.) On their return later that night, they discovered that the apartment lights had been turned on, and they found petitioner crouched in the living room, holding a television that had been taken from the bedroom. (Tr. 31A–34A, 43A, 13, 57–60.) Nearby on the floor was a vase containing money that had also been removed from the bedroom. (Tr. 33A, 60, 78.) According to both witness, petitioner sought to escape through an opened window, and, despite Mr. White's efforts to restrain him, he leaped down to the courtyard below and began to flee. (Tr. 34A–37A, 5–6, 30–31, 59.)

Mr. White testified that he had chased petitioner for a number of blocks, until his quarry stopped, apparently from fatigue, and crouched on the street near a parked car. (Tr. 35A–40A, 5–6.) At that point, according to Mr. White, he saw a police patrol car approach and waved for it to stop. Petitioner then stood up and began to walk briskly away. (Tr. 40A–41A, 6–7, 32–33, 35–36.) Mr. White gave chase, caught the fugitive, and held him until police officers from the patrol car arrived and arrested Roberts. (Tr. 41A–43A, 7.)

The arresting officer, Lola Chong, corroborated the testimony of Mr. White. She recounted that he had flagged down her patrol car, and that she had then observed him chase and seize the petitioner. (Tr. 45, 48.)

1. By the time of trial, Mr. White and Ms. Escobar had married, and Ms. Escobar had changed her name to Vilma White.

2. The trial transcript is paginated in two sections, the first of which encompasses the first day and covers fifty pages. The balance of the trial transcript is repaginated starting at page 1. References to the first day's session will use the letter "A" to distinguish that portion of the transcript.

She and her fellow officer separated the two men and, on learning of what had led to the altercation, they arrested petitioner. (Tr. 45–47.)

The State also called a second officer, Sergio Ruiz, who reported on the Police Department's unsuccessful effort to find identifiable fingerprints in the apartment. (Tr. 91–92.) According to Officer Ruiz, the only prints located were too smudged for identification. (Tr. 92.)

Roberts testified in his own defense. He denied ever having entered the apartment. (Tr. 116–17.) Instead, he claimed, White had approached him on the street in an apparently menacing fashion, and that he had fled, with Mr. White in pursuit. (Tr. 114–15, 122–23, 124.) Petitioner claimed that it was he who had flagged down the patrol car (Tr. 124–26), and he attempted to attribute Mr. White's alleged animus, and his assertedly false charges, to a prior incident in which he and White had been involved in a fight. (Tr. 99–101, 107.)

The jury returned a verdict of guilty on the top charge of second-degree burglary. (Tr. 214–15.) In the wake of that verdict, the court sentenced petitioner, as a predicate felon, to a term of fifteen years to life. (*See* Supplemental Affidavit of Assistant District Attorney Magda Vives, sworn to Oct. 9, 1992, at ¶ 6.)

Petitioner filed an appeal in the Appellate Division, First Department. In his brief he challenged the trial court's limitation of both of his own testimony concerning the alleged prior altercation with Mr. White, and the cross-examination of Vilma Escobar concerning her knowledge of a prior drug conviction of her husband. Petitioner also attacked the trial court's instructions concerning the significance of his "flight," and the court's summary denial of his pre-trial *Wade* motion. On February 21, 1989, the Appellate Division affirmed the conviction without opinion. *People v. Roberts,* 147 A.D.2d 991, 537 N.Y.S.2d 940 (1st Dep't 1989).

Petitioner thereafter applied to the New York Court of Appeals for leave to appeal. That application was denied on April 20, 1989. *People v. Roberts,* 73 N.Y.2d 1021, 541 N.Y.S.2d 775, 539 N.E.2d 603 (1989).

In September 1989, petitioner filed a motion in the trial court seeking relief under N.Y.Crim.Proc.L. § 440.10, based solely on the claim that the prosecutor had improperly resubmitted to the grand jury an already approved indictment so as to permit additional testimony to be taken. Justice Covington denied the motion and then adhered to his decision on petitioner's motion for reargument. (*See* Vives Supp.Aff. at ¶¶ 9–11 & Exhs. 7–11.) Petitioner then sought leave to appeal from those decisions, and the Appellate Division denied the application. (*Id.* at 12 & Exh. 12.)

Petitioner filed a second motion to vacate on June 6, 1990. In that motion he raised the previously noted objections to the indictment and the prosecutor's conduct in the grand jury, as well as his claim of ineffective assistance of trial counsel. Justice Covington denied this motion on October 3, 1990, and the Appellate Division denied petitioner's application for leave to appeal on January 8, 1991. (*See id.* at ¶ 13, 15–16 & Exhs. 13–14, 16–17.)

Petitioner filed his current habeas petition in 1991, after the last denial of relief by the state courts.

## *ANALYSIS*

### A. *The Exhaustion Issue Briefly Revisited*

In holding that two of petitioner's claims were unexhausted, the District Court concluded that petitioner had failed to identify either one to the state appellate courts as being of constitutional magnitude. One of these claims was that the trial court had improperly denied petitioner a hearing on his pre-trial *Wade* motion.

■ It is true that petitioner did not explicitly argue that the introduction of eyewitness identification testimony violated his right to due process under *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Nonetheless, in its responding brief the State plainly anticipated that the Appellate Division might look at this argument as, at least in part, a claim of

unduly suggestive identification procedures; thus, it explicitly addressed the question as a constitutional claim. (*See* Respondent's Brief at 24) (referring to "alleged suggestivity of the near-the-scene identification" of petitioner).[3] This analysis in the State's own briefing is generally considered sufficient to satisfy the exhaustion requirement of the habeas statute, *see, e.g., Daye v. Attorney General,* 696 F.2d 186, 192–93 n. 5 (2d Cir. 1982) (citing cases) (*en banc*), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984), and I therefore briefly address below the merits of petitioner's claim insofar as it may be construed to complain that his identification at trial was the product of unduly suggestive pre-trial procedures. *See* pp. 190–91, *infra.*

## B. *Petitioner's Attack on the Trial Court's Evidentiary Rulings (Claims 1 and 2)*

Petitioner's first and second claims are that the trial court twice unfairly foreclosed him from offering evidence that would have undercut the credibility of both Mr. White and Ms. Escobar. The first instance involved a ruling by the trial court precluding defense counsel from asking Ms. Escobar whether she was aware that her husband had been convicted in 1969 of a narcotics offense. Mr. White had already testified to that conviction, and that court refused to permit defense counsel to explore his wife's knowledge of that matter.

The second evidentiary dispute arose when petitioner took the stand and began to describe for the jury an alleged prior incident, in November 1986, in which Mr. White had supposedly become embroiled in a fight with an individual known to petitioner as "Tommy,"[4] apparently over the quality of drugs sold to White. Petitioner claimed to have observed and possibly gotten involved in the altercation, but Justice Covington quickly cut off his testimony when he started to describe statements purportedly made to him by "Tommy" about the reason for the fight. (Tr. 101–102.) After several attempts by

defense counsel to pursue this line were stopped, the Court held a robing-room conference and, in effect, precluded counsel from further inquiry into the entire subject of the fight, apparently because he was dissatisfied with the factual foundation for the testimony. (Tr. 103–06.) Thus, what started as a fairly narrow preclusion based on the hearsay nature of the testimony was expanded to prevent any further testimony about the entire incident.

Although respondent argues that both of these complaints are insufficient on their face to state a federal claim, petitioner's allegations may fairly be construed as arguing that he was denied the opportunity to present a defense, a mode of argument that, if properly supported, is of constitutional magnitude. *See, e.g., Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 2146–47, 90 L.Ed.2d 636 (1986) (quoting *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984)); *Chambers v. Mississippi,* 410 U.S. 284, 294–95, 93 S.Ct. 1038, 1045–46, 35 L.Ed.2d 297 (1973); *Webb v. Texas,* 409 U.S. 95, 98, 93 S.Ct. 351, 353–54, 34 L.Ed.2d 330 (1972) (*per curiam*); *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967); *William v. Lord,* 996 F.2d 1481, 1483–84 (2d Cir.1993); *United States v. Almonte,* 956 F.2d 27, 30 (2d Cir.1992); *Rosario v. Kuhlman,* 839 F.2d 918, 924 (2d Cir.1988). *See generally Gilmore v. Taylor,* — U.S. —, —, 113 S.Ct. 2112, 2118, 124 L.Ed.2d 306 (1993). Whether such a violation can be shown in this case is another matter. In fact, it cannot.

 On a habeas petition the federal court is of course limited to a determination of whether the challenged ruling involved error of constitutional magnitude. *See, e.g., Richmond v. Lewis,* — U.S. —, —, 113 S.Ct. 528, 536, 121 L.Ed.2d 411 (1992); *Estelle v. McGuire,* 502 U.S. 62, 67–69, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *Donnelly v. DeChristoforo,* 416 U.S. 637, 642–43, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974).

---

3. The State's appellate brief is annexed as Exhibit 2 to the Vives Supplemental Affidavit.

4. Although petitioner described "Tommy" as a friend, he professed not to know his last name or address. (Tr. 99–100, 128–29.)

In general, rulings by the state trial court on evidentiary questions are a matter of state law and pose no constitutional issue. *See, e.g., Estelle v. McGuire,* 502 U.S. at 67–69, 71–73, 112 S.Ct. at 480, 482; *Spencer v. Texas,* 385 U.S. 554, 562–63, 87 S.Ct. 648, 652–53, 17 L.Ed.2d 606, *reh. denied,* 386 U.S. 969, 87 S.Ct. 1015, 18 L.Ed.2d 125 (1967). *See also Michelson v. United States,* 335 U.S. 469, 486, 69 S.Ct. 213, 223–24, 93 L.Ed. 168 (1948). Thus the petitioner must demonstrate that the exclusion of challenged evidence violated an identifiable constitutional right. *See, e.g., Rosario v. Kuhlman,* 839 F.2d at 924; *Taylor v. Curry,* 708 F.2d 886, 890–91 (2d Cir.), *cert. denied,* 464 U.S. 1000, 104 S.Ct. 503, 78 L.Ed.2d 694 (1983). In doing so, "petitioner bears a heavy burden; more evidentiary errors generally do not rise to constitutional magnitude." *Aponte v. Scully,* 740 F.Supp. 153, 158 (E.D.N.Y.1990) (citing cases).

As noted, if we liberally interpret petitioner's arguments, they may be characterized, in effect, as a claim that the court's rulings impermissibly interfered with his "right to present a defense," *Rosario v. Kuhlman,* 839 F.2d at 924, a right that has been recognized as "one of the 'minimum essentials of a fair trial.' " *Id.* (quoting *Chambers v. Mississippi,* 410 U.S. at 294, 93 S.Ct. at 1045). *See also Davis v. Alaska,* 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974); *Williams v. Lord,* 996 F.2d at 1483–84; *United States v. Almonte,* 956 F.2d at 30. Moreover, this type of claim has been successfully invoked to challenge trial court rulings that substantially limited a defendant's ability to cross-examine witnesses for impeachment purposes. *See, e.g., Davis v. Alaska,* 415 U.S. at 315–19, 94 S.Ct. at 1109–12 (applying Confrontation Clause). Nonetheless, the application of this principle to petitioner's case does not yield the result for which he contends.

The right to present a defense is not without qualification. Thus, the Second Circuit has observed, it "does not give criminal defendants carte blanche to circumvent the rules of evidence. Restrictions on a defendant's presentation of evidence are constitutional if they serve 'legitimate interests in the criminal trial process,' . . . and are not 'arbitrary or disproportionate to the purposes they are designed to serve.' " *United States v. Almonte,* 956 F.2d at 30 (quoting *Rock v. Arkansas,* 483 U.S. 44, 55, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37 (1987)). *See also Michigan v. Lucas,* 500 U.S. 145, 150–53, 111 S.Ct. 1743, 1747–48, 114 L.Ed.2d 205 (1991); *Taylor v. Illinois,* 484 U.S. 400, 414–16, 108 S.Ct. 646, 655–56, 98 L.Ed.2d 798 (1988); *Williams v. Lord,* 996 F.2d at 1483; *Buie v. Sullivan,* 923 F.2d 10, 11 (2d Cir.1990).

■ The refusal to permit petitioner to question Ms. Escobar about her husband's nearly twenty-year-old narcotics conviction was merely a routine discretionary trial ruling on relevance and in no sense can be said to have been unreasonable. Indeed, whatever the significance of the conviction, her husband had already testified to it. Moreover, Ms. Escobar's knowledge of it would not—as petitioner argued at the time—reflect on her credibility as an eyewitness to petitioner's bungled burglary.[5]

■ As for the other set of rulings, at least insofar as petitioner sought to describe what "Tommy" had told him about either his alleged drug transaction with Mr. White or the reason for the fight, the court's ruling was consistent with commonly recognized principles barring the introduction of hearsay testimony. *See generally* Fed.R.Evid. 801(a)–(c), 802. This was, virtually by definition, a reasonable constraint on petitioner's ability to offer evidence at trial.

It is true that the court ultimately appeared to rule against any further testimony about the incident itself, and that this ruling was not clearly grounded in any legal principle articulated by the court or otherwise obvious on review. Indeed, defense counsel made clear that, apart from establishing the substance of any conversation, he was seeking to show that petitioner had become in-

---

**5.** In his offer of proof, defense counsel claimed that petitioner would establish that Mr. White was still involved in drug trafficking, and that his wife was aware of this involvement. (Tr. 66–76.)

Except for his abortive effort to offer hearsay testimony about the claimed fight between White and the otherwise unidentified "Tommy," petitioner never offered such evidence.

volved in the fight, and to use this incident to attack the credibility of Mr. White. (Tr. 107–13.) Such an attack was possible because the proffered testimony (a) conflicted with White's testimony that he had never previously seen petitioner, (b) gave White an arguable motive to falsely accuse petitioner of a burglary, and (c) explained petitioner's testimony that on January 29, 1987 White had encountered him on the street, apparently sought to attack him, and then chased him through the neighborhood.

Notwithstanding the arguable relevance of some of the excluded testimony, the record does not reflect a violation of petitioner's right to present a defense. In assessing such a claim based on the exclusion of relevant evidence, the habeas court must "determine whether the excluded evidence was *material* to the presentation of the defense." *Taylor v. Curry,* 708 F.2d at 891 (emphasis in original). *See also Flanders v. Meachum,* 824 F.Supp. 290, 299 (D.Conn.1993). The standard for materiality is the generally cited passage from *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), in which the Court observed:

> The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

*Id.* at 112–13, 96 S.Ct. at 2401–02 (quoted in *Rosario v. Kuhlman,* 839 F.2d at 925; *Taylor v. Curry,* 708 F.2d at 891). *See also Johnson v. Ross,* 955 F.2d 178, 181 (2d Cir. 1992); *Blissett v. Lefevre,* 924 F.2d 434, 439 (2d Cir.), *cert. denied,* 502 U.S. 852, 112 S.Ct.

158, 116 L.Ed.2d 123 (1991); *Collins v. Scully,* 755 F.2d 16, 18–19 (2d Cir.1985).

In this case although petitioner's testimony about the alleged earlier incident with Mr. White was ultimately cut off, prior to the court's final ruling petitioner was able to testify to the essential elements of what he claimed had occurred. Thus he testified that prior to January 29, 1987 he had seen Mr. White on one occasion, when Mr. White had "a fight . . . with a friend of mine." (Tr. 99.) He also told the jury that he had been involved in some way in the altercation, although the court instructed the jury to disregard, on hearsay grounds, any testimony about why the fight had occurred. (Tr. 100.) Finally, petitioner was then permitted to testify that on January 25, 1987 White had approached him, saying "I got you mother fucker now," and reached for him, and that petitioner had run away because of the prior incident. (Tr. 114.)

In short, petitioner was able to communicate to the jury the essentials of what he claimed had occurred in November 1986, and its relationship to his version of his encounter with Mr. White on January 29, 1987, albeit without a description of any conversation with Tommy, or any of the discussions between Tommy and Mr. White. Moreover, the linkage between the two events was then noted by his counsel in summation. (Tr. 146.)

Under these circumstances it cannot be said that petitioner was denied the opportunity to present a defense. *See, e.g., Buie v. Sullivan,* 923 F.2d at 12; *United States v. Capozzi,* 883 F.2d 608, 614–15 (8th Cir.1989), *cert. denied,* 495 U.S. 918, 110 S.Ct. 1947, 109 L.Ed.2d 310 (1990). Moreover, although the precluded reference to the claimed drug-related nature of the dispute between Tommy and White might have colored the record, it can scarcely be said that it would have created an otherwise-absent reasonable doubt, particularly in view of the corroboration of Mr. White's testimony by his wife, whose credibility was not at all impeached, and the further corroboration by Officer Chong, who confirmed that it was White, and not petitioner, who had sought police help in the course of their street chase.

## C. Petitioner's Complaints About the Identification Testimony (Portions of Grounds Four and Five)

■ As noted, petitioner advanced in state court, and seeks to reassert here, several challenges to the eyewitness trial identification of him. The challenges articulated both in his petition and in his prior section 440.10 motion and direct appeal essentially speak to asserted violations of state law. These involve the State's claimed failure to comply with N.Y.Crim.Proc.L. § 710.30(2), which requires notice to a defendant, within fifteen days after his arraignment, if the State intends to offer eyewitness identification at trial, and the court's assertedly improper denial of a *Wade* hearing, apparently because of the inadequacy of his motion papers under Crim.Proc.L. § 710.60. Since neither of these asserted violations reflect a claim of constitutional magnitude, they must be rejected.

■ As noted, petitioner's arguments to the state courts could also be viewed as at least implicitly raising a constitutional claim that the eyewitness identification of him at trial was tainted by unduly suggestive pretrial procedures. Indeed, the State briefly addressed that question in its responding brief on petitioner's direct appeal.

As best can be discerned, petitioner may have intended to challenge the identification of him by White at the time of his arrest and the fact that he was seen at the precinct sometime later by Ms. Escobar. (*See* Tr. 116, 77.) It does not appear however, that either encounter violated petitioner's due process rights. The State proffers the prosecutor's notice form (*see* Vives Supp.Aff. at Exh. 23), which refers to a "(confirmatory ID), not police-arranged ID procedure." The form notes two such identifications, one apparently by White at the time of the arrest and the other, an hour and a half later, which is not explained but is presumably Ms. Escobar's observation of petitioner at the station house. Insofar as White may have told Officer Chong before the arrest that petitioner was the man who had burglarized his home, this plainly does not involve an identification procedure under *Wade*, much less an unduly suggestive one. *See generally United States ex rel. Cummings v. Zelker*, 455 F.2d 714, 716 (2d Cir.1985) (citing cases), *cert. denied*, 406 U.S. 927, 92 S.Ct. 1800, 32 L.Ed.2d 128 (1977). *Accord, United States v. Bagley*, 772 F.2d 482, 492–93 (9th Cir.1985), *cert. denied*, 475 U.S. 1023, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986). Similarly, if Ms. Escobar simply encountered petitioner at the stationhouse without prearrangement, no violation would be established, particularly in view of the fact that her identification of the petitioner bore all the normal indicia of reliability. *See, e.g., United States v. Domina*, 784 F.2d 1361, 1369–70 (9th Cir.1986), *cert. denied*, 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987); *Snow v. Reid*, 619 F.Supp. 579, 582 (S.D.N.Y. 1985).[6]

In any event, the short answer to this perceived claim is that petitioner at trial never disputed the accuracy of the identification testimony, but rather claimed that Mr. White and Ms. Escobar had invented the claimed burglary. It necessarily follows that any error as to identification procedures would, by definition, have been harmless. *See generally Brecht v. Abrahamson*, —— U.S. ——, —— – ——, 113 S.Ct. 1710, 1717–19, 123 L.Ed.2d 353 (defining liberalized harmless-error standard for habeas cases), *reh. denied*, —— U.S. ——, 113 S.Ct. 2951, 124 L.Ed.2d 698 (1993).

## D. Petitioner's Attacks on the Indictment and the Grand Jury Proceeding (Ground 5)

As noted, petitioner invokes an array of challenges that he first aired in his two section 440.10 motions concerning the adequacy of the indictment and the procedures utilized by the prosecutor in obtaining it. It appears that these claims are all procedurally barred.

In addressing this issue, I note that the respondent has failed to assert a procedural bar defense in this proceeding. As recently

---

**6.** Mrs. Escobar had ample opportunity and reason to take notice of petitioner's physical appearance, she identified him at the stationhouse only a short time after the crime had been committed, and her identification of him at trial was certain and unhesitating. *See generally Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–83, 34 L.Ed.2d 401 (1972).

held by the Second Circuit, however, this court may address the matter *sua sponte* except in narrowly circumscribed circumstances, which do not appear to exist here. *See Washington v. James*, 996 F.2d 1442, 1448–51 (2d Cir.1993). It appears that respondent's omission was inadvertent and not a tactical decision to waive the defense, since there is no apparent advantage to respondent from avoiding it. *See id.* at 1448. It is also apparent that the claims at issue do not challenge the validity of the trial itself and that petitioner has not shown that the asserted violations reflect "conscious malice by a state court official [that] caused a federal violation." *Id.* at 1450. Accordingly, we may address the procedural bar question.

■ In responding to petitioner's first section 440.10 motion, which challenged the alleged resubmission of the indictment to the grand jury, the State argued to the trial court that petitioner should be deemed to have waived that claim pursuant to Crim. Proc.L. § 440.10(3)(a), which provides that the court may deny a motion to vacate because

> [a]lthough facts in support of the ground or issue raised upon the motion could with due diligence by the defendant have readily been made to appear on the record in a manner providing adequate basis for review of such ground or issue upon an appeal from the judgment, the defendant unjustifiably failed to adduce such matter prior to sentence and the ground or issue in question was not subsequently determined on appeal.

As the prosecutor noted, petitioner could have made the appropriate record and pressed his claims pursuant to a motion to dismiss the indictment under Crim.Proc.L. § 210.20, and she argued that Roberts' failure to do so should preclude post-appeal consideration of the claim. (*See* Affirmation of Assistant District Attorney Aimee L. Bernstein, executed October 17, 1989, at ¶ 8 (annexed to Vives Supp. Aff. at Exh. 7).) Alternatively, she argued that the motion should be denied on procedural grounds under N.Y.Crim.Proc.L. 440.30(4)(b) because petitioner's papers "do not contain sworn allegations substantiating or tending to sub-

stantiate all of the essential facts." (*Id.* at ¶ 9.) The court subsequently denied petitioner's motion without opinion. (*Id.* at ¶ 8.)

In response to petitioner's second section 440.10 motion—the only vehicle by which he asserted his remaining challenges to the indictment and the grand jury proceeding—the State again argued, as its sole defense, that petitioner's claims were waived under Crim. Proc.L. § 440.10(3)(a) by virtue of his failure to assert them on a motion to dismiss the indictment under Crim.Proc.L. § 210.20. (*See* Affidavit of Assistant District Attorney Richard Sheridan, sworn to July 25, 1990, at ¶ 14.) Once more, the trial court denied the motion without opinion. (*See* Vives Supp. Aff. at Exh. 16.)

These circumstances reflect an appropriate basis to invoke the procedural bar principle of *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594, *reh. denied,* 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 163 (1977), and its progeny. In assessing the procedural bar question, we look to whether the state-court decision that rejected the purported federal claim rested on an independent and adequate state-law ground. *See, e.g., Wedra v. Lefevre*, 988 F.2d 334, 338–39 (2d Cir.1993). In the absence of a state court opinion explicitly identifying the ground on which the court relied, we are left to infer from the relevant circumstances whether it is likely that the state courts relied on petitioner's asserted procedural default. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 738–40, 111 S.Ct. 2546, 2559, 115 L.Ed.2d 640, *reh. denied,* 501 U.S. 1277, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991); *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir.1993). *See also Ylst v. Nunnemaker*, 501 U.S. 797, 801–03, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991); *Wedra v. LeFevre*, 988 F.2d at 338–39 (test is whether the court has "good reason to question whether there is an independent and adequate state ground for the decision") (quoting *Coleman v. Thompson*, 501 U.S. at 738–40, 111 S.Ct. at 2559)).

In this case, in opposing both motions the State relied on petitioner's failure to assert the indictment and grand-jury claims prior to trial and thus to make a record permitting their assertion on direct appeal. This argu-

ment rested squarely on the cited provision of section 440.10, and in light of the trial court's denial of the motion without opinion, we may fairly infer that the trial court denied this aspect of petitioner's motions on the basis of the State's procedural argument, and that accordingly its ruling rested on an independent state-law ground.[7]

We may also fairly infer that the ground so relied upon was "adequate" for habeas purposes. The adequacy of the state-law ground turns on the consistency of its application by the state courts in like circumstances. *See, e.g., Dugger v. Adams,* 489 U.S. 401, 410–12, 417 n. 6, 109 S.Ct. 1211, 1217–18, 1220 n. 6, 103 L.Ed.2d 435, *reh. denied,* 490 U.S. 1031, 109 S.Ct. 1770, 104 L.Ed.2d 205 (1989); *Johnson v. Mississippi,* 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988); *Wedra v. LeFevre,* 988 F.2d at 339–40. In this case, although section 440.10(3)(a) grants the trial court some discretion as to whether to deem a claim waived, even a discretionary waiver rule is adequate if consistently applied in like circumstances. *See id.* at 340. A review of the New York cases indicates that they have, with some consistency, held that the appropriate procedure for challenging irregularities in the indictment and in grand jury procedures is by motion to dismiss the indictment a mechanism that creates the necessary record for appeal, and not by post-appeal motion to vacate the judgment. *See, e.g., People v. Iannone,* 45 N.Y.2d 589, 599, 412 N.Y.S.2d 110, 117, 384 N.E.2d 656 (1978); *People v. Nitzberg,* 289 N.Y. 523, 529–30, 47 N.E.2d 37, 40 (1943); *People v. Rodriguez,* 192 A.D.2d 562, 596 N.Y.S.2d 727 (2d Dep't), *app. denied,* 81 N.Y.2d 1079, 601 N.Y.S.2d 599, 619 N.E.2d 677 (1993); *People v. Warden,* 170 A.D.2d 469, 565 N.Y.S.2d 828, 829 (2d Dep't 1991), *app. denied,* 77 N.Y.2d 968, 570 N.Y.S.2d 502, 573 N.E.2d 590 (1992); *People v. Holdridge,*

128 A.D.2d 1000, 1001, 513 N.Y.S.2d 537, 538 (3rd Dep't), *app. denied,* 70 N.Y.2d 648, 518 N.Y.S.2d 1040, 512 N.E.2d 566 (1987); *People v. Grimsley,* 60 A.D.2d 980, 401 N.Y.S.2d 643, 644 (4th Dep't 1978); *People v. Darling,* 16 A.D.2d 994, 229 N.Y.S.2d 115, 116 (3rd Dep't 1962), *cert. denied,* 372 U.S. 924, 83 S.Ct. 743, 9 L.Ed.2d 729 (1963) & 377 U.S. 1005, 84 S.Ct. 1941, 12 L.Ed.2d 1053 (1964). *Cf. People v. Waldron,* 162 A.D.2d 485, 485–86, 556 N.Y.S.2d 404 (2d Dep't 1990); *People v. Rodriguez,* 79 A.D.2d 539, 433 N.Y.S.2d 584, 585 (1st Dep't 1980), *aff'd,* 55 N.Y.2d 776, 447 N.Y.S.2d 246, 431 N.E.2d 972 (1981).

The only remaining question is whether petitioner can show "cause" for his failure to assert his indictment and grand-jury-misconduct claims by motion to dismiss and then on direct appeal, and "actual prejudice" from the asserted error. *See, e.g., Murray v. Carrier,* 477 U.S. 478, 490–91, 106 S.Ct. 2639, 2646–47, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes,* 433 U.S. at 87–91, 97 S.Ct. at 2506–09.[8] There is no hint in the record of any reason for the untimely assertion of these claims, other than the likely and reasonable judgment of trial counsel that the claims were not worth pursuing. That being the case, these claims are barred even without our consideration of whether petitioner can demonstrate prejudice.

Finally, if we were ever to disregard the procedural bar, the result would be the same since petitioner's claims are entirely meritless. Thus, for example, petitioner's claim of insufficient evidence before the grand jury is not cognizable on habeas review since the indicted charges were heard at a plenary trial by a petit jury, which returned an unassailable guilty verdict. *See, e.g., Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989); *Lloyd v. Walker,* 771 F.Supp. 570, 576–77 (E.D.N.Y. 1991); *Blake v. Leonardo,* 710 F.Supp. 446,

---

**7.** Even if the state court denied the petitioner's first motion on the alternative stated ground— that is, the inadequacy of petitioner's papers— this too would constitute reliance on an independent state-law ground. (*See* N.Y.Crim.Proc.L. § 440.30(4)(b).)

**8.** The Supreme Court has recognized a narrow exception to the procedural bar rule " 'in an extraordinary case, where a constitutional viola-

tion has probably resulted in the conviction of one who is actually innocent.' " *Sawyer v. Whitley,* —— U.S. ——, —— n. 6, 112 S.Ct. 2514, 2519 n. 6, 120 L.Ed.2d 269, *reh. denied,* —— U.S. ——, 113 S.Ct. 21, 120 L.Ed.2d 948 (1992) (quoting *Murray v. Carrier,* 477 U.S. at 496, 106 S.Ct. at 2649–50); *Gonzalez v. Sullivan,* 934 F.2d 419, 422. In this case, however, petitioner fails to make such a showing.

449–50 (E.D.N.Y.1989). In any event, the submitted transcript of a portion of the grand jury testimony of Mr. White amply supports a charge of second-degree burglary. (*See* Vives Supp. Aff. at Exh. 21.)

As for petitioner's complaint about the asserted re-submission of the indictment to the grand jury, it fails both because it is premised solely on a claimed violation of state procedural law,[9] and because there is no evidence that this claimed re-submission ever occurred. Petitioner points only to his "rap sheet," which contains an initial arrest charge of Burglary in the Third Degree. (Vives Supp. Aff. at Exh. 6.) That entry reflects only the criminal complaint prepared by the District Attorney and not any decision by the grand jury as to what charges were supported by probable cause.

As for petitioner's complaint about the asserted lack of detail in the indictment, this is not an issue cognizable on habeas review. *See, e.g., United States ex rel. Mintzer v. Dros,* 403 F.2d 42, 43 (2d Cir.1967) (*per curiam* ), *cert. denied,* 390 U.S. 1044, 88 S.Ct. 1643, 20 L.Ed.2d 305 (1968); *Cortez v. Scully,* 717 F.Supp. 224, 227 (S.D.N.Y.1989); *United States ex rel Maisonet v. LaVallee,* 405 F.Supp. 925, 927 (S.D.N.Y.1975). In any event, the indictment [10] appears to be perfectly adequate to give petitioner notice of the charged crime. *See, e.g., Carroll v. Hoke,* 695 F.Supp. 1435, 1438 (E.D.N.Y. 1988), *aff'd mem.,* 880 F.2d 1318 (2d Cir. 1989).

Finally, petitioner complains that the prosecutor should have instructed the grand jury on Criminal Trespass in the Second Degree instead of burglary. (*See id.* at Exh. 13, pp. 2–7.) The distinction is that the crime of burglary requires intent to commit a crime while on the victim's property whereas criminal trespass does not. *Compare* N.Y. Penal Law § 140.25(2) *with* N.Y. Penal Law § 140.15. The obvious answer is that Mr. White's testimony fully supported the burglary charge since he reported seeing the intruder in the living room in possession of his television set and standing near a jar of money taken from his son's bedroom. (*See id.* at Exh. 21.) In any event, any error in this respect would have been harmless in view of the trial jury's conviction of petitioner on the burglary charges. *See, e.g., United States v. Mechanik,* 475 U.S. 66, 70, 106 S.Ct. 938, 941–42, 89 L.Ed.2d 50 (1986).

## E. *Petitioner's Criticism of His Trial Counsel (Ground 5)*

Petitioner's final claim is that his pre-trial and trial attorneys were so inadequate as to deny him his Sixth Amendment right to the effective assistance of counsel. This claim as baseless.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 *reh. denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). *See also United States v. DiTommaso,* 817 F.2d 201, 215 (2d Cir. 1987). In order to demonstrate a deprivation of the Sixth Amendment right to effective counsel, petitioner

> must show (1) that counsel's performance was so deficient and counsel's errors were so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) that counsel's deficient performance prejudiced petitioner's defense so seriously that it "deprive[d] the defendant of a fair trial, a trial whose result is reliable."

*Cuevas v. Henderson,* 801 F.2d 586, 589 (2d Cir.1986), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1354, 94 L.Ed.2d 524 (1987) (quoting *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064). *Accord, e.g., United States v. Eisen,* 974 F.2d 246, 265 (2d Cir. 1992), *cert. denied sub nom. Gabe v. United States,* —— U.S. ——, 113 S.Ct. 1619, 123

---

9. The authority cited by petitioner in support of this claim consists of Crim.Proc.L. § 190.65(3), and a series of state court decisions resting on state-law grounds. (*See* Vives Supp. Aff. at Exh. 6.)

10. A copy of the indictment is annexed to the Vives Supplemental Affidavit as Exhibit 22.

L.Ed.2d 178 (1993); *United States v. Aiello,* 900 F.2d 528, 532 (2d Cir.1990); *United States v. DiPaolo,* 804 F.2d 225, 234 (2d Cir.1986); *Holmes v. Bartlett,* 810 F.Supp. 550, 560–61 (S.D.N.Y.1993).

■ In evaluating counsel's performance, the court is to look to " 'an objective standard of reasonableness' under 'prevailing professional norms.' " *United States v. Cruz,* 785 F.2d 399, 405 (2d Cir.1986) (quoting *Strickland,* 466 U.S. at 688, 690, 104 S.Ct. at 2064–65, 2066). *See also United States v. Eisen,* 974 F.2d at 265; *United States v. Matos,* 905 F.2d 30, 32 (2d Cir.1990). As for the prejudice component of the analysis, petitioner must demonstrate " 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *United States v. Eisen,* 974 F.2d at 265 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068). Prejudice will not ordinarily be presumed, but must be affirmatively proven by the petitioner. *Strickland,* 466 U.S. at 693, 104 S.Ct. at 2067–68. *See generally Whaley v. Rodriguez,* 840 F.2d 1046 (2d Cir.), *cert. denied,* 488 U.S. 944, 109 S.Ct. 371, 102 L.Ed.2d 360 (1988).

■ It bears emphasis that the *Strickland* standard is quite deferential, and that a claim of constitutional dimension does not arise unless a lawyer's error is so egregious as to amount to a failure to provide minimal professional representation. Thus, a habeas court weighing an ineffective-assistance claim "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," and must "determine whether, in light of all the circumstances ... [counsel's] acts or omissions were outside the wide range of professionally competent assistance." *Id.* 466 U.S. at 690, 104 S.Ct. at 2066. At the same time, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Under this standard, counsel's tactical decisions, even those that go awry, will not provide the factual predicate for a Sixth Amendment claim. *See, e.g., United States v. Eisen,* 974 F.2d at 265; *United States v. Nerse-*

*sian,* 824 F.2d 1294, 1320–21 (2d Cir.), *cert. denied,* 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987) and 484 U.S. 1061, 108 S.Ct. 1018, 98 L.Ed.2d 983 (1988); *United States v. Cruz,* 785 F.2d at 404–07; *United States v. Graves,* 736 F.2d 850, 854 (2d Cir. 1984).

■ Judged by these standards, petitioner's claim cannot prevail. His first complaint is that his pre-trial counsel failed to file either a discovery motion under N.Y.Crim. Proc.L. § 240 or a motion for production of all *Rosario* and *Brady* material. The obvious problem with this criticism is that petitioner does not suggest what materials, if any, were improperly withheld by the State. Both *People v. Rosario,* 9 N.Y.2d 286, 290–91, 213 N.Y.S.2d 448, 451–52, 173 N.E.2d 881, *cert. denied,* 368 U.S. 866, 82 S.Ct. 117, 7 L.Ed.2d 64 (1961), and the N.Y.Crim.Proc.L. § 240.45(1) impose a duty on the prosecutor to produce prior statements even if no request has been made by defendant. *See also Brady v. Maryland,* 373 U.S. 83, 86–89, 83 S.Ct. 1194, 1196–98, 10 L.Ed.2d 215 (1963); *United States v. Zackson,* 6 F.3d 911, 917–18 (2d Cir.1993); *People v. Vilardi,* 76 N.Y.2d 67, 73–75, 556 N.Y.S.2d 518, 520–21, 555 N.E.2d 915 (1990). Moreover, the District Attorney's trial folder in this case reflects a notation that discovery was provided to defendant's attorney on June 21, 1987. (*See* Vives Supp. at Exh. 15.) In the absence of any evidentiary basis for inferring that any witness statements or other discoverable materials were withheld, we cannot infer either a duty by counsel to make a motion or any prejudice to petitioner from the failure to so move.

Petitioner also asserts that his attorney was ineffective because he was not aware of the substance of the testimony of Mr. White before the grand jury and therefore did not move to dismiss the indictment for lack of sufficient evidence to support the burglary charges. As noted, the grand jury testimony did support the burglary charge; hence the asserted ignorance and inaction of counsel were harmless.

In any event the District Attorney's records reflect a hearing on March 10, 1987 before Justice Covington in which the court

reviewed the grand jury minutes. (*See id.* at ¶ 14 & Exh. 15.) Again, this indicates that counsel did in fact make an application with respect to the grand jury proceedings and that the motion, insofar as it may have sought dismissal, was denied.

 As for petitioner's general complaint that his attorney did not perform effectively at trial, it is belied by the record. Counsel's performance reflected familiarity with both the facts and the law, and despite a relatively weak case for his client, he vigorously conducted the defense, undertaking more than *pro forma* cross-examination of the prosecution's witnesses, pressing as aggressively as possible for his client to be able to explain his version of events, objecting appropriately to the prosecutor's questions, moving for dismissal and delivering an entirely adequate summation, which offered a coherent theory of innocence based on the very limited exculpatory evidence in the record. A defense counsel need not be the equal of Clarence Darrow to pass constitutional muster, *see Wise v. Smith,* 735 F.2d 735, 738 (2d Cir. 1984), and in this case petitioner was plainly afforded constitutionally adequate representation at his trial.

### CONCLUSION

For the reasons stated, I recommend that the writ be denied and the petition dismissed with prejudice.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Mary Johnson Lowe, Room 803, and to the chambers of the undersigned, Room 503. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989); 28 U.S.C.A.

§ 636(b)(1) (West Supp.1992); Fed.R.Civ.P. 72, 6(a), 6(e).