THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* IRVING NITZBERG, Appellant.

524

Argued October 16, 1942; decided January 21, 1943.

*I. Maurice Wormser, Martin W. Littleton* and *Richard H. Brown* for appellant. The indictment was a nullity because the only evidence adduced before the grand jury was the uncorroborated testimony of accomplices, and no corroborating evidence was submitted connecting defendant with the crime charged. Therefore, the motion of defendant to dismiss the indictment, because found only on the testimony of accomplices who were uncorroborated, should have been granted, and its denial is reversible error. (Code Crim. Pro., §§ 256, 258, 399; *People* v. *Vollero*, 108 Misc. 635; 226 N. Y. 587; *People* v. *Burleson*, 119 Misc. 107; *People* v. *Acritelli*, 57 Misc. 574; *People* v. *Stern*, 33 Misc. 455; *People* v. *Evans*, 81 Misc. 606; *People* v. *Dally*, 174 Misc. 830; *People* v. *Nicosia*, 164 Misc. 152; *People* v. *Sweeney*, 213 N. Y. 37; *People* v. *Purtell*, 243 N. Y. 273; *People* v. *Smith*, 172 N. Y. 210; *People* v. *Sexton*, 187 N. Y. 495.) The trial of defendant upon an indictment which was based upon concededly insufficient evidence was in violation of the constitutional right guaranteed to him by section 6 of article 1 of the State Constitution. (*Jones* v. *Robbins*, 8 Gray, 329; *People* v. *Bogdanoff*, 254 N. Y. 16; *People ex rel. Battista* v. *Christian*, 249 N. Y. 314; *Matter of Mackin* v. *United States*, 117 U. S. 348; *United States* v. *Moreland*, 258 U. S. 433; *Matter of Bain*, 121 U. S. 1; *People* v. *Geyer*, 196 N. Y. 364; *People* v. *Bramwich*, 200 N. Y. 385; *People* v. *Sexton*, 187 N. Y. 495; *People* v. *Glen*, 173 N. Y. 395; *People ex rel. Hirschberg* v. *Supreme Court*, 269 N. Y. 392; *United States* v. *Coolidge*, 2 Gall. 364; *People ex rel. McGowan* v. *Warden of City Prison*, 155 App. Div. 484; *People ex rel. Pantiel* v. *Warden*, 286 N. Y. 632.)

*Thomas Cradock Hughes, Acting District Attorney (Edward H. Levine* of counsel), for respondent. No constitutional question is here presented. (*People* v. *Petrea,* 92 N. Y. 128; *People* v. *Costello,* 1 Den. 83; *People* v. *Dyle,* 21 N. Y. 578; *Dunn* v. *People,* 29 N. Y. 523; *Lindsay* v. *People,* 63 N. Y. 143; *People* v. *Turner,* 117 N. Y. 227; *People* v. *Johnson,* 185 N. Y. 219; *People* v. *Glen,* 173 N. Y. 395; *People ex rel. Battista* v. *Christian,* 249 N. Y. 314.) The defendant may not now have the indictment dismissed in disregard of the points: (1) That he has waived his right to attack the indictment; (2) that it is not well settled that an indictment based on accomplice testimony is bad; and (3) that the object is to prevent the People from reading in evidence the testimony of a witness who died after the first trial. (*People* v. *Willett,* 213 N. Y. 368; *People* v. *Sweeney,* 213 N. Y. 37; *People* v. *D'Argencour,* 95 N. Y. 624; *People* v. *Wiechers,* 179 N. Y. 459; *People* v. *Sheffield-Farms-Slawson-Decker Co.,* 206 N. Y. 79; *People* v. *Giordano,* 114 Misc. 62; 231 N. Y. 633; *People ex rel. Giallarenzi* v. *Munro,* 150 Misc. 41; *People ex rel. Rao* v. *Warden of City Prison,* 170 Misc. 834.)

LEHMAN, Ch. J. The defendant was indicted for murder in the first degree for the killing of Albert Shuman on January 9, 1939. The indictment was filed on July 2, 1940, and the defendant pleaded not guilty on July third. He was tried in May, 1941, found guilty by the jury and sentence of death was pronounced on June second. Upon appeal to this court the judgment of conviction was reversed on December 4, 1941. A motion for reargument made by the District Attorney was denied in February, 1942. He was again tried upon the same indictment and now appeals from the judgment of conviction rendered March 23, 1942, upon the second trial.

Upon the first trial one Abraham Reles, a self-confessed accomplice in the killing of Shuman, testified in effect that his " business " was murder in Brooklyn, that he was told by one of his bosses in such " business " that Shuman was giving the police information about him and that Shuman must be killed; that the witness then enlisted the services of this defendant as an aide in the killing; and that pursuant to a prearranged plan the defendant shot and killed Shuman. Two other men who were members of the same gang conducting the " business " of murder, and who were accomplices

in the killing, also testified against the defendant. The defendant denied their story and testified that he had no connection with the gang and was not acquainted with any of the men who, according to the testimony of their accomplices, were members of the gang. To furnish the corroboration of the testimony of the accomplices which is required by the statute (Code Cr. Pro., § 399), the People produced three other witnesses who, it is said, were not accomplices. The judgment entered upon the verdict of the jury upon the first trial was reversed for error in the charge, not for insufficiency of the evidence; but in appraising the effect of the error and determining whether it might be disregarded, the prevailing opinion pointed out that " this defendant took the stand. His guilt is far from being clearly exhibited by the record. Of the three witnesses for the People who gave evidence sufficient to satisfy the statutory requirement of corroboration of Reles two had been prisoners in a jail where the defendant had been confined. Their testimony was that the defendant admitted his guilt to them or in their hearing to persons who visited him there. The third of these witnesses was a thrice-convicted criminal." (287 N. Y. 183, 193.)

An indictment must be based upon evidence which in the judgment of the grand jury " would, if unexplained or uncontradicted, warrant a conviction by the trial jury." (Code Cr. Pro., § 258.) " It is manifest, therefore, that if the only testimony before the grand jury is the testimony of accomplices, it cannot be said to be sufficient, if unexplained or uncontradicted, to warrant a conviction by the trial jury " and when it appears that an indictment is founded upon evidence which as matter of law is insufficient to warrant a conviction, the courts have power to set it aside. (*People* v. *Sweeney*, 213 N. Y. 37, 42.) " This power is based upon the inherent right and duty of the courts to protect the citizen in his· constitutional prerogatives and to prevent oppression or persecution. It is a power which the Legislature can neither curtail nor abolish, and, to the extent that legislative enactments are designed to effect either of these ends, they are unconstitutional." (*People* v. *Glen*, 173 N. Y. 395, 400.)

A few days after the motion for reargument of the first appeal had been denied by this court, the defendant made a motion for the inspection of the minutes of the grand jury as a preliminary

to a motion to dismiss the indictment. The motion was denied by an order entered February 17, 1942. A motion to dismiss the indictment made immediately thereafter on the ground that the indictment was based solely on the testimony of witnesses who were accomplices as matter of law was denied on February 24, 1942. Upon the appeal from the judgment of conviction entered upon the verdict of the jury rendered upon the second trial the defendant seeks to bring up these two orders for review.

We may upon this appeal disregard the order denying the motion for an inspection of the minutes if it appears, even without such inspection, that the testimony of accomplices was the only evidence before the grand jury, and that the indictment should have been dismissed on that ground. Unquestionably none of the three witnesses produced at the first trial to furnish corroboration of the testimony of the accomplices were heard by the grand jury before it indicted the defendant. The alleged admissions of guilt of the defendant were made to the two prisoners in the jail where the defendant was confined *after* the indictment was found, and the third corroborating witness, one David Price, " a thrice-convicted criminal," had testified at the first trial that he did not appear before the grand jury and had not informed the District Attorney that he had any information concerning the homicide until immediately before the trial began. There can be no doubt that the indictment was based upon evidence which, as matter of law, is insufficient, unless the grand jury had access to corroborative evidence which the District Attorney had failed to produce at the first trial of the indictment.

To prove that no additional evidence was produced before the grand jury, the defendant showed that upon the motion for a reargument the District Attorney had submitted an affidavit stating: " We have no additional evidence to offer " and that the Assistant District Attorney who participated in the preparation and the first trial of the case had on November 24, 1941 — while the appeal from the judgment rendered at that trial was pending in this court — asked in the Court of General Sessions of New York County that clemency be shown to one George Stern because George Stern had been helpful to the People in obtaining evidence against Nitzberg. The minutes of the hearing in the Court of

General Sessions show that the Assistant District Attorney of Kings county at that time said in open court:

" Nitzberg was indicted on the 2nd of July, 1940, and at that time the evidence against Nitzberg was only that of accomplices who had squealed, or opened up, to the district attorney of Kings County about the whole group of cases which were then being prosecuted in our office. We had no independent corroborative testimony upon which we could proceed against Nitzberg and the indictment went along for some time without being prosecuted because of that fact. A number of motions were made in the County Court to dismiss that indictment for lack of prosecution.

" In the month of March, 1941, Judge FITZGERALD, in the County Court, ordered that we proceed with the trial of Nitzberg's case on or before May 12th, otherwise he would dismiss the indictment. At that time we still had no corroborative testimony, or independent proof, upon which we could hope to base a conviction against Nitzberg."

The District Attorney of Kings county did not assert upon the motion to dismiss the indictment that " any corroborative testimony or independent proof " had been in his possession or produced before the grand jury. As now appears, he could not have done so, for in an affidavit made by the District Attorney after the conclusion of the second trial, the District Attorney stated that in March, 1941, " the principal evidence in our possession came from accomplices, and the necessary corroboration by way of independent proof was lacking." Further reference to that affidavit will be made hereafter in this opinion. Since the affidavit was made after the motion to dismiss the indictment was decided, we refer to it at this point only because it destroys any possibility that the statements or admissions of similar nature made by the District Attorney or his assistant which were submitted upon the motion might be subject to some undefined limitation or explanation.

" An indictment is a record of the court which imports absolute verity *until properly impeached.* (*People* v. *Hulbut,* 4 Denio, 133, 136.) The presumption is that an indictment is based upon legal and sufficient evidence *until there is satisfactory proof to the contrary.*" (Italics are new.) (*People* v. *Glen, supra,* p. 403.) In that case the court refused to set aside the indictment saying: " In the case at bar

there is no proof of that kind." In the case we are now review-ing there is unchallenged " proof to the contrary." No " presump-tion " can overcome such proof. In an analogous situation, Mr. Justice STORY, then sitting as a Circuit Judge, has said: " Lee's affidavit is direct and positive, as to a fact, of which he could not be ignorant. The counter affidavits are merely of impressions. The court must be governed by the rules of evidence, and the facts must therefore be taken to be as stated by Lee. Of the law arising upon these facts there can be no doubt. The Grand Jury is the great inquest between the government and the citizen. It is of the highest importance, that this institution be preserved in its purity, and that no citizen be tried, until he has been regularly accused by the proper tribunal. Every indictment is subject to the control of the court, and this indictment, having been found irregularly, and upon the mere statement of a witness without oath, which was not evidence, a cassetur must be entered." ( *United States* v. *Coolidge*, 2 Gall. 364; s. c. 25 Fed. Cas. 622.)

No person may be held or tried in this State upon a charge of felony unless that charge is made by the grand jury in an indictment based upon legal and sufficient evidence. Upon the uncontradicted proof that the evidence upon which the indictment in this case is based was insufficient as matter of law, the trial court would, it seems plain, have been bound to grant the motion if, before the first trial, the defendant had challenged the indictment by motion to dismiss. The question remains whether the court was bound to grant the motion to dismiss made after the defendant had been convicted upon a trial where evidence legally " sufficient to satisfy the statutory requirement " had been produced, though for errors in the charge the judgment of conviction had been reversed and a new trial ordered. The indictment described by STORY and other judges as the " great inquest between the government and the citizen " is intended to give assurance to the citizen that he will not be held for trial until he has been accused before the appro-priate tribunal upon evidence which is competent and legally sufficient, but it may be said that an indictment has performed its function when an accused has been tried and convicted and the judgment of conviction is sustained by sufficient evidence and is otherwise in accordance with the law. Though the Legislature

may not curtail the right of an accused to challenge the sufficiency of a charge upon which an accused is *held for trial,* the courts of this State have refused to dismiss an indictment upon the motion of a defendant made when the accused is held under a judgment of conviction after a valid finding of guilt by a trial jury. The Legislature has provided that a motion based upon objections to an indictment which appear on the face of the indictment must be made before or at the time when the defendant is called for judgment. (Code Cr. Pro., §§ 323, 331, 467, 469.) Though a motion to dismiss the indictment on the ground that it is based upon insufficient evidence is not within the scope of these statutory provisions, literally construed, we have held that the court may properly deny such a motion made after judgment has been entered upon a verdict untainted by any reversible error at the trial. (See *People* v. *Giordano,* 231 N. Y. 633.) The right to challenge the sufficiency of an indictment may be lost where the finding of guilt by the trial jury gives the same or greater assurance against oppression and persecution as an indictment based on sufficient evidence is intended to give before trial has been had.

A judgment of conviction which has been reversed and a new trial granted, because the finding of the trial jury is fatally tainted with error, furnishes no such assurance. " When a new trial is ordered, it shall proceed in all respects as if no trial had been had." (Code Cr. Pro., § 544.) If the defendant has not been " regularly accused by the proper tribunal " there is no charge pending upon which he can be tried again. An accusation by a grand jury made upon evidence which is declared by statute to be insufficient gains no additional force because the District Attorney, after the accusation was made by the grand jury, has obtained other evidence which, *if presented to the grand jury,* might be sufficient to justify an accusation by the grand jury *if, in its judgment,* that evidence would warrant a conviction by the trial jury — nor has a finding by the trial jury at a trial so tainted with error that it has been set aside by an appellate court any further effect. The statute in plain language so provides and even without a statute the courts give no effect to a judgment which has been reversed. The defendant while held for a second trial after the judgment of conviction rendered at the first trial was reversed, had the same right to

challenge the sufficiency and regularity of the accusation that he had before the abortive trial. He has a right to demand that an accusation, made upon insufficient evidence, be set aside so that he may not be tried upon an indictment " found irregularly." A judgment of a competent court of criminal jurisdiction may not be attacked collaterally nor the legality of detention by virtue of such a judgment questioned by a writ of habeas corpus. (Civ. Pr. Act, § 1231.) By failure to move to set aside the indictment before such judgment the defendant lost the right to attack the indictment while he was detained by virtue of the judgment. He did not by such failure waive the right to move to dismiss the indictment when the judgment was set aside. It does not appear that before judgment or even before the motion was made by the District Attorney for a reargument of the appeal from the judgment, the defendant knew that the indictment was based on incompetent or insufficient evidence and that he could obtain " satisfactory proof " sufficient to impeach the indictment.

It is true that if the indictment which was " found irregularly " is dismissed, the testimony of Reles who we have said was the " chief witness for the People " at the first trial will no longer be available. Reles died after the first trial and his testimony was read in evidence at the second trial, but it could not be read in evidence at the trial of a different indictment. That circumstance, it appears, influenced the denial of the motion to dismiss. We conclude that it furnishes insufficient ground for such denial.

The safeguards against unfounded accusation and unjust conviction provided for an accused by the Constitution and statutes may not be weakened by judicial decision to meet the supposed exigencies of a particular case. The guilty should not escape punishment, but punishment may follow only upon a finding of guilt by a jury upon a trial at which the safeguards provided for the protection of an accused have been zealously observed and guilt has been established by proof which conforms to legal standards. Repetition of what this and other courts have often said about the wisdom of adhering to such standards and applying every safeguard against possible oppression in the administration of the criminal law would serve no useful purpose. This case, exemplifies strikingly the wisdom of such adherence.

From July, 1940, to May, 1941, the defendant was in prison awaiting trial upon an indictment found upon evidence which even though unexplained and uncontradicted was, as matter of law, insufficient to warrant conviction. During this period, the defendant made unsuccessful motions to dismiss the indictment for lack of prosecution, but in March, 1941, as appears from this record, a judge of the County Court directed that the People proceed with the trial of the case on or before May twelfth, stating that otherwise he would dismiss the indictment. From the date when the indictment was filed, the District Attorney knew that he must obtain evidence to corroborate the testimony of accomplices and during most of that time he did not have such corroborative evidence, and did not know where he could obtain it. We feel entirely certain that the District Attorney would not countenance the conviction or even prosecution of an accused whom he believed innocent, nor would he stoop to seek evidence to convict even an accused of whose guilt he was convinced by dubious methods. Nonetheless, the more convinced of the guilt of the accused a District Attorney is, the more eager he might be to obtain corroborative evidence. Professional criminals would labor *under no illusion* about the benefit that might accrue to them if they furnished the corroborative evidence urgently needed by the District Attorney. The three witnesses who furnished such corroborative evidence were confirmed criminals and though it is abundantly proven by this record that the District Attorney made no promise to them that they would receive any benefit in consideration of their testimony, it is also abundantly proven that they did in fact obtain such benefits in recognition of their help.

In November, or December, 1940, the District Attorney's office obtained information that Roberts, a prisoner confined in the same jail as the defendant, might be able to give testimony that the defendant had admitted guilt to him. Three indictments for larceny of three automobiles were pending against Roberts. He pleaded guilty to grand larceny, first degree, on one of these indictments *before* he testified against this defendant but *after* he testified for the People at the first trial and on the day that trial ended the charge to which he had pleaded guilty was reduced to petit larceny and sentence was suspended. The other indictments pending

against him were dismissed and Roberts was released. It is interesting though perhaps not relevant that he went South, stole another automobile and was serving a sentence of imprisonment in a Federal prison when he testified at the second trial.

The witness Zager apparently did not communicate with the District Attorney's office until March, 1941, after the District Attorney had been notified that the defendant must be tried on or before May twelfth. Zager was then confined in Sing Sing prison where he was visited by an Assistant District Attorney. He was brought to New York City from Sing Sing prison on March 21, 1941, and kept in jail there till November, 1941, when he was returned to a State prison. Upon the request of the District Attorney a parole was granted Zager before the second trial, but he was informed that " if he is unwilling to testify or refuses to cooperate with the district attorney, such action on his part is to be considered a violation of his parole."

The third and most important witness produced to corroborate the accomplices was David Price. The appellant urges that Price, too, was an accomplice or, at least, that the jury might so find, but the trial judge charged that as matter of law he is not an accomplice. Since we have concluded that the indictment should be dismissed it is unnecessary to decide now whether upon this record the jury might have found that Price was a guilty participant in the killing. Price's testimony was obtained only a few days before the first trial was begun. Shortly before that time one George Stern gave the District Attorney information that Price had played some part in the killing of Shuman for which the defendant was indicted. Price had been named as a co-defendant with Stern in two indictments then pending in New York county and the police of New York county were searching for Price. Through the information furnished by Stern, Price was found in New Jersey by detectives assigned to the office of the District Attorney of Kings county and brought back to Kings county. He was then interrogated and at first denied any association with the *Nitzberg* case. What then occurred was narrated by the Assistant District Attorney of Kings county in November, 1941, when he asked the Court of General Sessions of New York County to show clemency to Stern upon the indictments pending against him in that court.

" He (Stern) was permitted to speak to Price and we were later informed that this defendant urged Price in his own interests, and for himself, to tell the absolute truth of what he knew about the Shuman killing, that it would be of aid to the District Attorney of the County of Kings, and of this county, and it was as a result of that talk with Price that Price then gave us what we later found to be a full and complete statement of his participation, and the facts that he knew in this case. He later testified upon the trial, and I say to this court without fear of contradiction, and the record will bear me out, were it not for the testimony of David Price in the *Nitzberg* case we would never have secured a conviction."

After Price had testified against Nitzberg at the second trial the District Attorney of Kings county submitted an affidavit in the Court of General Sessions asking that clemency be shown to Price also upon his indictments for grand larceny as a co-defendant with Stern for whom clemency had been asked earlier. We quote from that affidavit:

" There was pending in this office an indictment against Irving Nitzberg alias ' Knadles,' alias ' Kay,' charging the said defendant with the crime of murder in the first degree for the killing of Albert Schulman on January 9, 1939. At or about that time an order was made by Honorable JOHN J. FITZGERALD, County Judge of this County, directing your deponent to proceed with the trial of the Nitzberg indictment on or before May 13, 1941, otherwise the said indictment was to be dismissed for lack of prosecution, the indictment against said defendant having been found by a grand jury of this County on July 3, 1940.

" At that time the principal evidence in our possession came from accomplices, and the necessary corroboration by way of independent proof was lacking. This situation existed until shortly before the date set for trial, to wit, May 12, 1941. It was during this period that information came to me that one David Price, the above named defendant, if produced as a witness on behalf of the People, could testify to facts which would definitely corroborate the testimony of the accomplices, and would be sufficient as a matter of law and fact to convict the said Nitzberg for the murder with which he was charged.

" A few days before the trial date detectives of my office located the said David Price in the town of Dunnellen, New Jersey, where he was residing with his wife. Price voluntarily came into this county and told me and my assistants who were in charge of the Nitzberg prosecution, everything he knew concerning Nitzberg's participation in the murder of Albert Schulman. He personally was in no way involved in the said crime, but the information which he gave me, and the facts to which he later testified on the trial, supplied the necessary corroboration which I needed to proceed with the trial of the said Nitzberg. Principally, a result of his testimony, the said Nitzberg was tried in the month of May, 1941, before the Honorable PETER J. BRANCATO, and convicted of the crime of murder in the first degree. This conviction was subsequently reversed by the Court of Appeals, and the case sent back for a new trial. Nitzberg was re-tried in March, 1942, and again convicted of murder in the first degree. The Appeal in that case is now pending.

" Price testified upon the second trial substantially the same as on the first trial. I am firmly of the opinion that without the testimony of David Price there could not have been a conviction in the *Nitzberg* case. The conviction of said defendant was one of a group of murder cases prosecuted in this office.

" When Price was brought to this county he was under indictment in New York County of the crime of robbery, and I immediately communicated with the then District Attorney Hon. Thomas E. Dewey, that Price was in my custody. I informed him of the information which Price gave me and informed him that Price would testify as a witness in the *Nitzberg* case. It was agreed between us that if Price did so testify, and aided me in the Nitzberg trial, that District Attorney Dewey would recommend to this court that Price be permitted to plead guilty to a misdemeanor to cover any indictments pending against him in New York County.

" For all of the above reasons I respectfully request the Court to accept the recommendation of the District Attorney of New York County that the above named defendant be permitted to plead guilty to a misdemeanor to cover the pending indictments against him."

It thus appears beyond possibility of dispute that the defendant was held for ten months upon an indictment found by the grand jury upon evidence which, as matter of law, would not warrant submission of guilt to a trial jury; that while the defendant was so held the District Attorney sought the evidence required by law to warrant such submission; that when the time was near at which the District Attorney was required to begin the trial, two confirmed criminals then actually in prison and a third " thrice-convicted criminal " who was a fugitive from justice, offered to supply the necessary corroborative evidence; that all three when first interviewed by the District Attorney or his assistants at first failed or refused to admit that they could, if they chose, give testimony which would be helpful; that all three did thereafter give testimony and that the District Attorney then obtained clemency for all three in recognition of the belated assistance they had given. We do not doubt that the District Attorney asked the grand jury to indict the defendant upon the testimony of the three self-confessed accomplices only because he himself was convinced that their story was credible, nor do we doubt that he asked the trial jury to find the defendant guilty only because he was himself convinced of the defendant's guilt and did not believe that the corroborative testimony, though coming from witnesses who are confirmed criminals, was fabricated by them. We may well doubt, however, whether the testimony of these witnesses would have been offered to the District Attorney or would have been discovered by him if these professional criminals had not known that the defendant was held under an indictment which the District Attorney was reluctant to bring to trial and had not known, too, that testimony which would result in Nitzberg's conviction would bring to them rich reward. The defendant has been held and tried upon an indictment found without sufficient evidence and at the trial the defendant has been convicted upon testimony which is open to grave suspicion, because it is infected by the taint of the indictment. A conviction resting upon such a foundation should not stand. We repeat what we have so often said, an accused may not be punished by imprisonment or death until he has been proven guilty in accordance with law.

The judgment of conviction should be reversed and the indictment dismissed.

CONWAY, J. (dissenting). The defendant has been convicted of murder in the first degree by two separate juries after protracted trials. Judgment was first pronounced upon him in June, 1941. He had then been awaiting trial upon his indictment from July, 1940. During that period he made no motion to inspect the minutes of the grand jury which indicted him and no motion to dismiss the indictment upon the ground that it had been found upon insufficient evidence. Under those circumstances he waived such objection. (*People* v. *Willett*, 213 N. Y. 368; *People* v. *Giordano*, 114 Misc. 62; 231 N. Y. 633.)

In December, 1941, we reversed his first conviction not upon the ground that it was contrary to the weight of the evidence but by reason of error in the charge of the court. We pointed out that the statutory requirement of corroboration of the witness Abraham Reles had been met. (*People* v. *Nitzberg*, 287 N. Y. 183, 193.)

Concededly there had not been corroboration of the witness Reles before the grand jury. Concededly the corroboration required by the statute was obtained subsequent to the indictment. During the month preceding our reversal, the accomplice Reles died. Code of Criminal Procedure, section 8, permits the reading of the testimony of a deceased witness on a new trial of a defendant following a reversal of a conviction, only when the new trial is had upon the same indictment.

During the ten months during which the defendant was awaiting trial prior to his first conviction, had he moved for a dismissal of the indictment upon the ground that it was based upon insufficient evidence, that motion would have been granted and if the District Attorney had no proof corroborative of the accomplice Reles, that would have been an end to the case unless and until such corroboration was obtained. If at the time of such dismissal the District Attorney had in his possession the necessary corroborative proof, he could have presented such proof to another grand jury and, no doubt, obtained from it a new indictment differing only in that it would be typed upon a different piece of paper. Reles would then have been alive and could have testified on the trial and, if there had been a reversal of a conviction then obtained, his testimony could have been read on a subsequent trial or trials after his death.

Following swift upon the reversal of his conviction, the defendant, realizing that if he could obtain a dismissal of the indictment the testimony of the deceased accomplice Reles could not be used against him and that he would thus escape punishment, moved for a dismissal of the indictment upon the ground that it was based upon insufficient evidence. That motion was denied and upon his trial before a second jury he was again convicted of the crime of murder in the first degree.

The majority of this court has decided that that motion should have been granted and that the indictment should now be dismissed. We dissent from that decision upon the ground that the defendant, after full opportunity to move and after representation by able counsel, waived his right to a dismissal of the indictment by failing to move with reference to it prior to going to trial. We refrain from pointing out the exceptional sordidness of the crime of which two juries have found the defendant guilty. The indictment is being dismissed solely as a matter of law.

It is conceded by the majority that the defendant waived his right to a dismissal of the indictment by going to trial without moving therefor and that, if the first conviction had not been reversed by us, it would have been a legal one. (*People* v. *Giordano*, *supra*.)

Section 544 of the Code of Criminal Procedure reads as follows: " When a new trial is ordered, it shall proceed in all respects as if no trial had been had." Because of the wording of that statute this court is about to decide that the waiver of the defendant is nullified by our reversal and that he now has another opportunity to move for a dismissal of the indictment regardless of whether or not the party plaintiff, the People of the State of New York, has suffered by reason of the death of Reles. The parties are not in the same position as before. (Cf. Code Cr. Pro., § 464.) They never can be when one of the eventualities provided for in Code of Criminal Procedure, section 8, occurs, as it has occurred here. Under those circumstances a new trial cannot be had as though there had never been a previous trial and all the testimony cannot be produced anew. The Legislature appreciated that when it enacted section 8 of the Code of Criminal Procedure. We think that if a defendant sees fit to waive his right to move with respect

to an indictment prior to his trial thereon, that that waiver is final. It is but just and certainly involves neither oppression nor persecution to require that a defendant make up his mind whether he shall or shall not waive his right to move with reference to an indictment prior to the time when he first goes to trial rather than to permit him to gamble upon a possible reversal of a conviction following the death, insanity or departure from the State of a witness against him.

The judgment should be affirmed.

LOUGHRAN, RIPPEY and DESMOND, JJ., concur with LEHMAN, Ch. J., Conway, J., dissents in opinion in which FINCH and LEWIS, JJ., concur.

Judgment of conviction reversed, etc.