Filed 1/27/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| RICHARD TORRES ARTEAGA,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | H040702<br>(Santa Clara County<br>Super. Ct. No. 213441) |

## I.    INTRODUCTION

A grand jury indicted petitioner Richard Torres Arteaga on charges of participating in a criminal street gang (Pen. Code, § 186.22, subd. (a))[1] and conspiracy to sell methamphetamine (§ 182, subd. (a)(1); Health & Saf. Code, § 11379), with an allegation that petitioner committed the conspiracy for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(A)) and an allegation that petitioner had a prior narcotics conviction (Health & Saf. Code, § 11370.2, subd. (c)).

Petitioner moved to dismiss the grand jury indictment. He argued there was not "reasonable or probable cause" for the indictment (§ 995) because the only evidence the

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

grand jury received in support of the charges was uncorroborated accomplice testimony. After the trial court denied petitioner's section 995 motion, petitioner filed a petition for writ of mandate and/or prohibition in this court.

The Attorney General contends we should deny the petition because petitioner did not file his section 995 motion within 60 days of his arraignment, which is a prerequisite for pretrial writ review under section 1510. We conclude that under the circumstances of this case, petitioner may seek pretrial writ review of the trial court's order despite his failure to file his section 995 motion within 60 days of his arraignment, because he had "no opportunity" to file the motion earlier and was "unaware of the issue." (§ 1510.)

In his writ petition, petitioner contends uncorroborated accomplice testimony is insufficient to support a grand jury indictment. We conclude that uncorroborated accomplice testimony can be the basis for a grand jury indictment. We will therefore deny the petition for writ of mandate and/or prohibition.

## II.    BACKGROUND

### A.    *Grand Jury Testimony:  Sergeant Dan Livingston*

Campbell Police Sergeant Dan Livingston was the first witness to testify before the grand jury. After describing his training and experience, he was presented as an expert in the following areas:  gangs (specifically, the Nuestra Familia), firearms, controlled substances, and sales of controlled substances.

The Nuestra Familia originated as a prison gang, in an attempt to protect its members from the Mexican Mafia. Today, the Nuestra Familia operates both inside and outside of prisons. Most Nuestra Familia members are from Northern California. In order to become an actual Nuestra Familia member, a person must be sponsored and prove his or her dedication to the organization, primarily by committing assaults in jails and prisons or on the streets. Members are governed by a constitution, and they must follow orders, even orders to murder their own family members.

2

Nuestra Raza is the organization of gang members underneath the Nuestra Familia. Nuestra Raza members are leaders of the Norteños, the street gang that is aligned with Nuestra Familia. Norteños identify with the number 14 and the color red. Norteños are governed by a code of conduct called the "14 Bonds." Norteños serve the Nuestra Familia organization on the street level, by selling drugs and assaulting people.

On the street, the Nuestra Familia has an organized structure. There is typically a Regiment Commander and a Second in Command, who may also be known as a Regiment Security, a Second, or a Reserve. There may be a Squad Leader. There are also regiment members and associates.

The primary activities of the Nuestra Familia are: murder, assault with a deadly weapon or firearm, and sales of controlled substances. Gang members may also engage in extortion, witness intimidation, kidnapping, illegal firearms possession, arson, threats, grand thefts, robbery, burglary, forgery, identity theft, and counterfeiting.

A "kite" is a piece of paper with tiny writing, which is a form of communication used by members of the Nuestra Familia organization who are in custody. Some kites are written in a "dead Aztec language" or in code, and others have "ghost writing," which is when a person uses a sharpened staple to etch the paper, and the recipient uses graphite or a pencil to reveal the writing.

On November 20, 2012, a kite was located inside a purse belonging to the mother of codefendant Leonard Rodriguez. Livingston believed the kite had been written by codefendant Robert Pacheco.

In the kite, Pacheco wrote that his family had been "disrespected by an individual named Flaco," which is petitioner's nickname. Pacheco described how Flaco had tried to intimidate Pacheco's family at the request of Pacheco's "baby mom," who was supposed to have given his family money from methamphetamine sales. Pacheco claimed that Flaco had also been spreading rumors that Pacheco was snitching, and that Flaco was

3

telling people he was "a big homie," meaning a member of Nuestra Raza or Nuestra Familia.

## B.   *Grand Jury Testimony:  Jesus Cervantes*

Jesus Cervantes (also known as Jesse Cervantes) testified under an immunity agreement.  He had pending charges of conspiracy to distribute methamphetamine, participation in a criminal street gang, and attempted murder.  He had decided to cooperate prior to his preliminary hearing.

Cervantes had been a driver for Nuestra Familia member Angel Martinez.  As a driver for Martinez, he had delivered methamphetamine and helped to collect "hood taxes."  Cervantes had also committed a shooting at the Creekside Grill, and he had been involved in drug sales with various codefendants.

Cervantes identified a picture of petitioner and confirmed that petitioner went by the name Flaco.  He described petitioner as "[o]ne of [the] people that was selling for [Martinez]."  Cervantes had seen Martinez give petitioner methamphetamine to sell about five times.  Petitioner had gotten into debt with Martinez, and petitioner had given Martinez a .38-caliber firearm as a down payment.

## C.   *Grand Jury Instruction:  Accomplice Testimony*

During the grand jury proceedings, the following instruction regarding accomplice testimony was given:

"You may not find probable cause as to any defendant of any crime based on the testimony of an accomplice alone.  You may use the testimony of an accomplice to find probable cause as to any defendant only if,  [¶]  1. The accomplice[']s testimony is supported by other evidence that you believe.  [¶]  2. That [sup]porting evidence is independent of the accomplice's testimony, and  [¶]  3. That supporting evidence tends to connect the defendant to the commission of the crime or crimes.  Supporting evidence, however, may be slight.  It does not need to be enough by itself to prove the defendant is guilty of the crime charged.  It does not need to support every fact about which the

4

witness testified.  On the other hand, it is not enough if the supporting evidence merely shows that a crime was committed or the circumstances of its commission.  The supporting evidence must tend to connect the defendant to the commission of the crime.

"The evidence needed to support the testimony of one accomplice can not be provided by the testimony of another accomplice.  Any testimony of an accomplice that tends to incriminate the defendant should be viewed with caution.  You may not, however, arbitrarily disregard it.  You should give that testimony the weight you think it deserves after examining it with care and caution in light of all the other evidence."

### D.    *Grand Jury Indictment*

A 77-count grand jury indictment was filed on May 31, 2013 against 48 defendants, including petitioner.  In count 1, all defendants were charged with participating in a criminal street gang.  (§ 186.22, subd. (a).)  In count 2, petitioner and 33 other defendants were charged with conspiracy to sell methamphetamine.  (§ 182, subd. (a)(1); Health & Saf. Code, § 11379.)  As to count 2, one of the overt acts alleged that petitioner and certain other defendants "sold methamphetamine in association with the Nuestra Familia street regiment."  The indictment further alleged that petitioner committed count 2 for the benefit of a criminal street gang.  (§ 186.22, subd. (b)(1)(A).)  Finally, as to petitioner, the indictment alleged a prior narcotics conviction.  (Health & Saf. Code, § 11370.2, subd. (c).)

Petitioner was arraigned on the indictment on September 25, 2013.  Counsel was appointed to represent petitioner on October 2, 2013.  Discovery was provided to counsel on October 17, 2013.  Counsel thereafter reviewed the 2,370 pages of grand jury transcripts in addition to 1,520 pages of grand jury exhibits, 1,500 pages of discovery documents, plus numerous audio recordings and images.  Counsel filed a demurrer to the indictment on December 16, 2013, which was denied on December 31, 2013.

### E.    Section 995 Motion

On or about January 6, 2014, petitioner filed a motion to dismiss the indictment pursuant to section 995. He argued that the evidence presented to the grand jury was insufficient to support a finding of probable cause as to count 1 (the substantive gang crime) or the gang allegation, and he argued that both the gang and conspiracy counts should be dismissed because even if there was evidence to support a finding of probable cause, that evidence consisted solely of uncorroborated accomplice testimony.

The People filed opposition to petitioner's motion to dismiss. The People argued that sufficient evidence supported count 1, count 2, and the gang allegation, and that the accomplice testimony requirement applicable to trial proceedings does not apply to preliminary hearings or grand jury proceedings.

A hearing on the motion to dismiss was held on January 22, 2014. After hearing argument from petitioner and the People, the trial court took the matter under submission. On February 10, 2014, the trial court issued a minute order denying petitioner's motion.

### F.    Writ Proceedings

On February 24, 2014, petitioner filed a petition for writ of mandate and/or prohibition in this court. We summarily denied the petition on March 6, 2014. Petitioner thereafter filed a petition for review in the California Supreme Court. On May 14, 2014, the Supreme Court granted the petition and transferred the matter back to this court with directions to vacate our previous order and to issue an order directing respondent superior court to show cause why the relief sought in the petition should not be granted.

We issued the order to show cause on May 23, 2014. We provided the People (real party in interest) the opportunity to file a return in opposition to the writ, and we gave petitioner the opportunity to file a reply to the return. We directed petitioner to augment the record with the entire transcript of the grand jury proceedings, and we directed the parties to address not only the merits of the petition, but whether pretrial review is appropriate in light of the time requirements of section 1510.

6

## III.  DISCUSSION

### A.      *Availability of Pretrial Writ Review*

In their return, the People contend that pretrial writ review is not available because petitioner did not file his section 995 motion within 60 days of his arraignment, as required by section 1510.

Section 1510 provides:  "The denial of a motion made pursuant to Section 995 or 1538.5 may be reviewed prior to trial only if the motion was made by the defendant in the trial court not later than 45 days following defendant's arraignment on the complaint if a misdemeanor, or 60 days following defendant's arraignment on the information or indictment if a felony, unless within these time limits the defendant was unaware of the issue or had no opportunity to raise the issue."

Thus, section 1510 contains two exceptions to the 60-day requirement:  "(1) lack of awareness of the issue or (2) lack of an opportunity to raise it." (*Fleming v. Superior Court* (2010) 191 Cal.App.4th 73, 103 (*Fleming*).)  Petitioner contends both exceptions apply here.

As the 60-day requirement of section 1510 applies only to appellate review of a section 995 motion or a section 1538.5 motion, the issue of whether a writ petition is time-barred is not raised in the trial court.  The appellate court therefore determines, in the first instance, "whether the bar applies or one of the exceptions does." (*Ghent v. Superior Court* (1979) 90 Cal.App.3d 944, 951 (*Ghent*).)

The "no opportunity" exception contained in section 1510 can apply where the transcript of the preliminary hearing or grand jury proceedings is particularly lengthy or where there has been a delay in providing the transcript to the petitioner.  For instance, in *Ghent,* the petitioner was a criminal defendant who, following a preliminary hearing, was charged with murder with special circumstances and various other felonies.  The petitioner filed a section 995 motion 65 days after his arraignment. (*Ghent, supra,* 90 Cal.App.3d at p. 949, fn. 4.)  He contended that his filing delay should be excused

7

because of the length of the preliminary hearing transcript and because the transcript had not actually been prepared and made available to him "until a substantial period of time had elapsed after his arraignment." (*Id.* at p. 951.) The appellate court agreed that the transcript delay should not have been counted against the 60-day period prescribed by section 1510 and held that the petitioner had "brought himself within the 'no opportunity' exception provided in section 1510," particularly since his filing delay had been de minimis. (*Id.* at p. 952.)

Both exceptions to section 1510's 60-day rule applied in the related cases of *Fleming, supra,* 191 Cal.App.4th 73 and *McGill v. Superior Court* (2011) 195 Cal.App.4th 1454 (*McGill*). The two cases arose out of a grand jury investigation into misuse of public funds by a school superintendent.

In *Fleming,* the petitioner filed his section 995 motion more than two years after his arraignment. (*Fleming, supra,* 191 Cal.App.4th at p. 103.) The court explained that the "unawareness" exception can apply where there is "ineffective assistance in not timely bringing a meritorious section 995 motion." (*Id.* at p. 104.) In that case, the petitioner's former counsel was ineffective for not bringing an earlier challenge to the indictment because "the prosecution's legal theories [we]re untenable." (*Ibid.*) In addition, the " 'no opportunity' exception" applied (*id.* at p. 105) because the grand jury transcripts were lengthy, consisting of five volumes plus another two volumes of exhibits (*id.* at p. 104). "Those volumes would necessarily have had to be read and digested by Fleming's counsel to present a section 995 motion. Particularly given the voluminous record and the delay in the actual preparation of the transcripts and forwarding to counsel (even if the record was technically finalized prior to the arraignment), it is unlikely all the reading could have been completed, much less a proper motion prepared, in 60 days. [Citation.]" (*Id*. at pp. 104-105.)

The *McGill* court applied similar reasoning in holding that section 1510 did not preclude the petitioner from filing a section 995 motion more than 60 days after

arraignment on an indictment. There, the court noted that the "basic timeframes" were "roughly the same as in *Fleming*," but that in addition, the *McGill* petitioner had been charged with perjury, which was an "extremely fact intensive" crime, particularly since the indictment had not specified which part of her grand jury testimony was false. (*McGill, supra,* 195 Cal.App.4th at p. 1513.) Noting that the petitioner was represented by a solo practitioner, the *McGill* court found there was "no way" that counsel "could possibly have completed the job in 60 days," and thus "no way" the court "could *fail* to find lack of opportunity." (*Id.* at p. 1514.) The *McGill* court also found " 'unawareness' given the complexity of the issues," explaining that it would required a "line-by-line review" of the grand jury testimony as well as extensive legal research. (*Ibid.*)

In the instant case, petitioner was arraigned on September 25, 2013, and he filed his section 995 motion on or about January 6, 2014, a little over three months (103 days) later. Petitioner had not been appointed counsel until one week after his arraignment, on October 2, 2013. Discovery was not provided to counsel until two weeks after her appointment, on October 17, 2013. After receiving the discovery, petitioner's counsel reviewed the 2,370 pages of grand jury transcripts (contained in 13 volumes) in addition to 1,520 pages of grand jury exhibits, 1,500 pages of discovery documents, plus numerous audio recordings and images. The record here is even larger than the record deemed "voluminous" in *Fleming, supra,* 191 Cal.App.4th at page 104—at 13 volumes of transcripts, it is more than twice the size of the *Fleming* record. As in *Fleming*, the transcripts and exhibits "would necessarily have had to be read and digested by [petitioner's] counsel to present a section 995 motion." (*Id.* at pp. 104-105.) In light of the voluminous record and the fact there was a delay of several weeks in providing the discovery to petitioner's counsel, "it is unlikely all the reading could have been completed, much less a proper motion prepared, in 60 days. [Citation.]" (*Id.* at p. 105; see also *McGill, supra,* 195 Cal.App.4th at p. 1514; *Ghent, supra,* 90 Cal.App.3d at p. 952.)

Moreover, the issue raised by petitioner's section 995 motion was "extremely fact intensive" and essentially required a "line-by-line review" of the grand jury testimony. (See *McGill, supra,* 195 Cal.App.4th at pp. 1513, 1514.) Counsel would have had to read all of the grand jury testimony in order to determine whether the testimony about petitioner was corroborated. Additionally, there is no published case law concerning whether, under the current statutory scheme, uncorroborated accomplice testimony may support a grand jury indictment. Thus, in order to determine if the legal issue was arguably meritorious, counsel would have had to do extensive legal research. (See *id.* at p. 1514.)

Under the circumstances of this case, we conclude that the "no opportunity" and "unaware of the issue" exceptions to section 1510 should apply, so petitioner may seek pretrial writ review of the trial court's order denying his section 995 motion despite his failure to file the motion within 60 days of his arraignment. We proceed to consider the merits of that motion.

### B.      *Corroboration of Accomplice Testimony*

Petitioner contends the only evidence supporting his indictment is the testimony of Cervantes and the kite written by Pacheco. He contends both Cervantes and Pacheco were accomplices and that no independent evidence corroborates Cervantes' testimony or the contents of the kite with respect to petitioner's involvement in the criminal offenses. Petitioner claims uncorroborated accomplice testimony cannot support a grand jury indictment.

Petitioner first presents a statutory construction argument, claiming that the accomplice corroboration requirement of section 1111 is incorporated into the requirements for grand jury proceedings by virtue of section 939.8.

Section 1111 provides: "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it

10

merely shows the commission of the offense or the circumstances thereof. [¶] An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

Section 939.8 provides: "The grand jury shall find an indictment when all the evidence before it, taken together, if unexplained or uncontradicted, would, in its judgment, warrant a conviction by a trial jury."

Petitioner claims that, read together, these two statutes provide that a grand jury indictment cannot be based on uncorroborated accomplice testimony. He contends, "[B]asing an indictment on uncorroborated accomplice testimony would violate Penal Code section 939.8 because Penal Code section 1111 provides that such evidence is insufficient to warrant a conviction by a trial jury."

The California Supreme Court has made it clear that the phrase "warrant a conviction by a trial jury" (§ 939.8) does not mean a grand jury must receive evidence that would actually prove a defendant's guilt beyond a reasonable doubt. "By including the phrase 'warrant a conviction by a trial jury,' the Legislature did not intend to equate a grand jury proceeding with a trial . . . ." (*Cummiskey v. Superior Court* (1992) 3 Cal.4th 1018, 1026 (*Cummiskey*).) In *Cummiskey,* the Supreme Court considered the standard of proof applicable to grand jury proceedings. The grand jury had been instructed that it should find an indictment if the evidence provided " 'sufficient cause' " to believe that the defendant had committed a public offense. (*Id.* at p. 1025.) The instruction had defined "sufficient cause" as " 'enough evidence to support a strong suspicion or probability of (1) the commission of the crime or crimes in question, and (2) the accused's guilt thereof.' " (*Ibid*.) The defendant contended that instead, the grand jury should have been instructed in the language of section 939.8.

The California Supreme Court rejected the defendant's claim that section 939.8 provided a higher standard of proof for grand jury proceedings. "By including the phrase

11

'warrant a conviction by a trial jury,' the Legislature did not intend to equate a grand jury proceeding with a trial . . . ." (*Cummiskey, supra,* 3 Cal.4th at p. 1026.)  The court noted that the term "warrant" can mean "justification or *reasonable grounds* for some act, course, statement, or belief. . . .' " (*Ibid.*)  The court further noted that an indictment is " 'an accusation in writing, presented by the grand jury to a competent court, charging a person with a public offense.'  Thus, under the statutory scheme, it is the grand jury's function to determine whether probable cause exists to accuse a defendant of a particular crime.  In other words, the grand jury serves as part of *the charging process* of criminal procedure, not *the adjudicative process* that is the province of the courts or trial jury." (*Ibid.*)

The *Cummiskey* court further noted that " 'evidence which will justify a prosecution need not be sufficient to support a conviction.' " (*Cummiskey, supra,* 3 Cal.4th at p. 1027.)  The court explained that "the grand jury's function in determining whether to return an indictment is analogous to that of a magistrate deciding whether to bind a defendant over to the superior court on a criminal complaint.  Like the magistrate, the grand jury must determine whether sufficient evidence has been presented to support holding a defendant to answer on a criminal complaint.  This is what section 939.8 means when it requires the grand jury to return an indictment when evidence would 'warrant a conviction by a trial jury.' " (*Ibid.*)

Although *Cummiskey* did not involve the precise issue presented here, it is instructive because it confirms that the phrase "warrant a conviction by a trial jury" (§ 939.8) does not import into grand jury proceedings the standards of proof applicable to a jury trial.  Thus, even though uncorroborated accomplice testimony cannot provide the basis for a conviction at trial, it may "warrant"—that is, provide "justification or *reasonable grounds* for" the grand jury to return an indictment. (*Cummiskey, supra,* 3 Cal.4th at p. 1026.)

12

Petitioner also argues that section 939.6 supports his position. That section provides in pertinent part that "the grand jury shall not receive any evidence except that which would be admissible over objection at the trial of a criminal action," and that if the grand jury receives inadmissible evidence, the indictment is not void as long as "sufficient competent evidence to support the indictment was received by the grand jury." (§ 939.6, subd. (b).) We do not believe that this statute supports the proposition that uncorroborated accomplice testimony may not validly be received by a grand jury or that uncorroborated accomplice testimony is not "competent evidence to support the indictment." (*Ibid.*) There is no question that accomplice testimony is admissible at trial, even if uncorroborated. (*People v. Tewksbury* (1976) 15 Cal.3d 953, 967 (*Tewksbury*).) Accomplice testimony is therefore also "competent evidence." (§ 939.6, subd. (b).) "Competent evidence is evidence that, if relevant, is otherwise admissible under the laws of evidence. [Citation.]" (*Coburn v. State Personnel Bd.* (1978) 83 Cal.App.3d 801, 809 (*Coburn*).)

The California Supreme Court has explained that corroboration is required for accomplice testimony at trial because "such testimony has been legislatively determined never to be sufficiently trustworthy *to establish guilt beyond a reasonable doubt* unless corroborated." (*Tewksbury, supra,* 15 Cal.3d at p. 967, italics added.) Thus, although uncorroborated accomplice testimony is categorically insufficient to support a conviction, that rationale does not render such testimony insufficient to support the finding of probable cause necessary for a grand jury indictment.

Our conclusion is buttressed by a line of early California cases including *Greenberg v. Superior Court* (1942) 19 Cal.2d 319 (*Greenberg*). In *Greenberg*, which predated the enactment of section 995, the California Supreme Court held that an

13

indictment was subject to review for "some evidence" to support it.[2] (*Id.* at p. 322.)  The *Greenberg* defendant had filed a petition for writ of prohibition, claiming no evidence supported an indictment charging him with conspiracy to commit grand theft.  The court rejected the District Attorney's claim that writ relief was unavailable.  The court noted that while at common law a grand jury indictment was "unimpeachable," the reason for this rule ceased to exist when transcripts began to be kept and made available to both the defendant and the prosecution.  (*Ibid.*)

In reaching its conclusion regarding the availability of writ review in grand jury proceedings, the *Greenberg* court discussed *In re Kennedy* (1904) 144 Cal. 634 (*Kennedy*), in which "a defendant petitioned for a writ of *habeas corpus* on the ground that the uncorroborated testimony of an accomplice, which constituted the evidence presented to the grand jury, was insufficient to justify an indictment." (*Greenberg, supra,* 19 Cal.2d at p. 322.)  The *Greenberg* court pointed out that at the time of the *Kennedy* decision, transcripts of grand jury proceedings were not available to defendants, and it held that therefore, "The [*Kennedy*] court properly refused the writ, holding, in accordance with the general rule, that it would not inquire into the sufficiency of the evidence." (*Ibid.*)

As the Attorney General points out, subsequent cases have cited *Greenberg* for the proposition that uncorroborated accomplice testimony is sufficient to support a grand jury indictment.  For instance, in *Jensen v. Superior Court* (1950) 96 Cal.App.2d 112 (*Jensen*), the court cited *Greenberg* for the proposition that in determining whether there was "some evidence" to support the indictment, the court could rely on uncorroborated

---

[2] "Following the 1949 amendment to section 995, it became commonplace for indicted defendants to bring a motion under that section to set aside the indictment on grounds that the transcript showed there was insufficient evidence for the grand jury to find probable cause. [Citation.]" (*People v. Superior Court (Mouchaourab)* (2000) 78 Cal.App.4th 403, 419.)

14

accomplice testimony "if it supplied some evidence of guilt, although such testimony would not by itself justify a conviction. [Citations.]" (*Id.* at pp. 114-115; see also *Stern v. Superior Court* (1947) 78 Cal.App.2d 9, 17 (*Stern*) [citing *Greenberg* in stating that the uncorroborated testimony of accomplices "is sufficient to support an indictment"]; *Abbott v. Superior Court* (1947) 78 Cal.App.2d 19, 21 (*Abbott*) [citing *Stern* in rejecting the argument "that the uncorroborated testimony of an accomplice will not support an indictment"].)

Petitioner contends that *Greenberg* and related authority are not controlling. Petitioner argues that *Kennedy*, which was approved in *Greenberg,* is not relevant because under the law at the time, an indictment could not be challenged "on the ground that there was not sufficient evidence to support it." (See *Kennedy, supra,* 144 Cal. at p. 637.) Petitioner further notes that *Greenberg* itself did not involve the question of whether uncorroborated accomplice testimony can support a grand jury indictment. Additionally, petitioner argues that the cases decided after *Greenberg* (i.e., *Jensen, Stern,* and *Abbott*) only addressed the issue in dicta.

Even if *Greenberg* and the related cases discussed above did not involve the precise issue of whether uncorroborated accomplice testimony can support an indictment under the current statutory scheme, we observe that none of those cases have been criticized or overruled. In particular, we find it significant that *Greenberg* and *Kennedy* were California Supreme Court cases. " 'Even if properly characterized as dictum, statements of the Supreme Court should be considered persuasive. [Citation.]' [Citation.]" (*Hubbard v. Superior Court* (1997) 66 Cal.App.4th 1163, 1169.) Moreover, as petitioner acknowledges, there are no cases to the contrary—that is, there are no cases holding that uncorroborated accomplice testimony is insufficient to support a grand jury indictment. Thus, we believe the *Greenberg* line of cases lends support to a conclusion that uncorroborated accomplice testimony can support a grand jury indictment.

15

Petitioner analogizes to the rule requiring a grand jury indictment to "include at least some evidence that the prosecution is not barred by the statute of limitations." (*People v. Crosby* (1962) 58 Cal.2d 713, 725 (*Crosby*).)  In *Crosby,* the court held that such a showing is necessary "if the evidence upon which the indictment is based is to 'warrant a conviction by a trial jury' (Pen. Code, § 939.8)." (*Ibid.*)  However, this rule is not relevant to the question of whether uncorroborated accomplice testimony can support an indictment.  The statue of limitations "is a jurisdictional defect" (*ibid.*), whereas the lack of corroboration for accomplice testimony does not preclude a prosecution from proceeding.

In fact, *Crosby* supports the conclusion that even though a conviction cannot be based solely on uncorroborated accomplice testimony, such testimony can be sufficient to support an indictment.  In *Crosby,* the California Supreme Court emphasized that the standard for a section 995 motion based on insufficient evidence is not the same standard applied to post-conviction insufficiency challenges.  The court explained that it is a "settled rule that '[a]n indictment will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.' [Citation.]" (*Crosby, supra,* 58 Cal.2d at p. 719.)  The court explained that "the basis of that 'rational ground' " must be legal, competent evidence, but not evidence that would be inadmissible at trial, such as hearsay. (*Ibid.*)  Since accomplice testimony is not inadmissible (*Tewksbury, supra,* 15 Cal.3d at p. 967)—*Crosby* supports the conclusion that such testimony can provide a " 'rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.' [Citation.]" (*Crosby, supra,* at p. 719.)

Petitioner's reliance on *Mott v. Superior Court* (1964) 226 Cal.App.2d 617 is similarly unpersuasive.  That case involved inadmissible evidence presented to the grand jury:  an involuntary confession, which the court described as not "legally competent." (*Id*. at p. 618.)  As discussed above, accomplice testimony is admissible at trial, even if

16

uncorroborated (*Tewksbury, supra,* 15 Cal.3d at p. 967) and thus, when relevant, it is legally competent evidence (*Coburn, supra,* 83 Cal.App.3d at p. 809).

Petitioner acknowledges that uncorroborated accomplice testimony admitted at a preliminary hearing can be the basis of a magistrate's order holding a defendant to answer. (See *People v. McRae* (1947) 31 Cal.2d 184, 186 [accomplice testimony is " 'sufficient to make it appear that there is a "probability" ' " that a defendant is guilty of the offense charged].) Petitioner contends, however, that there are differences between preliminary hearings and grand jury proceedings that justify different rules regarding accomplice testimony.

Petitioner relies primarily on *People v. Miranda* (2000) 23 Cal.4th 340 (*Miranda*), where the California Supreme Court noted that the rationale for requiring corroboration of accomplice testimony at trial does not apply when a juvenile court judge or a magistrate is making a factual determination: " 'Accomplice testimony is generally suspect because it may have been proffered in the hope of leniency or immunity, and thus greater weight may be accorded such testimony than is warranted. [Citation.] However, when a judge rather than a jury is trier of fact it is not unreasonable to assume he [or she] is more critical of accomplice testimony and more likely to accord it appropriate weight.' [Citation.] [¶] The same observation can be made of magistrates conducting preliminary examinations." (*Id.* at p. 351, quoting *In re Mitchell P.* (1978) 22 Cal.3d 946, 951-952 (*Mitchell P.*) ["there is less reason for application of the arbitrary accomplice corroboration rule in juvenile court proceedings," where a judge or referee is the trier of fact].)

According to petitioner, it is necessary to have corroboration of accomplice testimony at grand jury proceedings in order to provide a "safeguard[]" ensuring that probable cause determinations rest on reliable evidence—i.e., to make sure that grand juries are suspect and critical of accomplice testimony. However, that safeguard can be provided by an appropriate instruction to the grand jury, like the one given to the grand

17

jury in this case, which provided in part: "Any testimony of an accomplice that tends to incriminate the defendant should be viewed with caution."

In support of his argument, petitioner invokes the rule requiring prosecutors to present exculpatory evidence to a grand jury. (See *Johnson v. Superior Court* (1975) 15 Cal.3d 248, 255 (*Johnson*); § 939.71.) In *Johnson,* the court explained why the prosecution has a duty to present the grand jury with exculpatory evidence: "if the district attorney does not bring exculpatory evidence to the attention of the grand jury, the jury is unlikely to learn of it." (*Johnson, supra,* at p. 255.) The rationale for requiring the prosecution to present the grand jury with exculpatory evidence does not support a rule requiring corroboration of accomplice testimony in grand jury proceedings. Requiring the grand jury to be informed of exculpatory evidence, which may negate a probable cause finding, is not analogous to requiring the jury to be provided with corroboration, which would only serve to strengthen a probable cause finding. As we have already noted, an instruction (such as the one given in this case) informing the grand jury to view an accomplice's testimony with caution will ensure the grand jury can fairly perform its investigatory function.

Petitioner also contends that a 1943 New York case, *People v. Nitzberg* (1943) 289 N.Y. 523 [47 N.E.2d 37] (*Nitzberg*), is "directly on point" and "illustrates why due process requires that the prosecutor must offer corroborating evidence to the grand jury." In *Nitzberg*, the defendant had moved to dismiss an indictment "on the ground that the indictment was based solely on the testimony of witnesses who were accomplices as matter of law." (*Id.* at p. 527.) The relevant New York State statute contained language similar to that in section 939.8: it provided that an indictment had to be "based upon evidence which in the judgment of the grand jury 'would, if unexplained or uncontradicted, warrant a conviction by the trial jury.' [Citation.]" (*Nitzberg, supra,* at p. 526.) The *Nitzberg* court agreed with the defendant " 'that if the only testimony before

18

the grand jury is the testimony of accomplices, it cannot be said to be sufficient, if unexplained or uncontradicted, to warrant a conviction by the trial jury.' " (*Ibid.*)

*Nitzberg* is an out-of-state case that is not binding on California courts. Moreover, it is not persuasive authority for the proposition that, at grand jury proceedings, accomplice corroboration is required by due process principles. Our Supreme Court has stated that "[t]he accomplice testimony rule is not constitutionally based." (*Mitchell P., supra,* 22 Cal.3d at p. 949.)

Petitioner next points out that in the instant case, the prosecutor informed the grand jury that corroboration was required, and he complains that by changing its legal position, the prosecution is "trifling with the courts and the parties." The " 'theory of trial' " doctrine "is a well-established rule of appellate practice. [Citation.] The application of this doctrine is discretionary, however, and several exceptions have developed. One of the recognized exceptions is that a party may elect to change his [or her] theory if the issue only involves a question of law. [Citation.]" (*Fenton v. Board of Directors* (1984) 156 Cal.App.3d 1107, 1113.) Here, the issue before us—whether uncorroborated accomplice testimony can support a grand jury indictment—"only involves a question of law." (*Ibid*.) Thus, despite the prosecutor's instructions to the grand jury, the Attorney General is not precluded from arguing that, as a matter of law, no corroboration is required.[3]

_____

[3] In a footnote, petitioner asserts that the accomplice instructions given to the grand jury were incomplete because they did not explain the legal meaning of the term "accomplice" nor specify that, as to petitioner, Cervantes was an accomplice as a matter of law. Petitioner does not set forth a separate legal argument on this point or support it with citation to authority. While any instructional argument may therefore be deemed waived (see *People v. Nguyen* (2013) 212 Cal.App.4th 1311, 1325-1326), we observe that the grand jury "could have been under no possible misapprehension as to [Cervantes's] position as an accomplice." (*People v. Evans* (1963) 211 Cal.App.2d 534, 537.)

In reaching our conclusion that accomplice testimony can support a grand jury indictment even if not corroborated, we observe that corroboration of accomplice testimony will always be helpful to the grand jury and should be presented, if possible. We further observe that a cautionary instruction like the one given in this case will assist the grand jury in determining whether or not uncorroborated accomplice testimony supports an indictment, and that jurors are presumed to "understand and follow" such instructions. (See *People v. Yeoman* (2003) 31 Cal.4th 93, 139.)

### C. *Unreliability*

Petitioner alternatively contends that even if corroboration of accomplice testimony is not required, "the evidence presented against [him] is so inherently unreliable and incompetent that it cannot support a probable cause finding." He contends that because such evidence forms the basis for the indictment, his constitutional rights to due process and a fair trial have been violated.

Petitioner does not identify anything about the accomplice testimony in this case rendering it particularly unreliable. Rather, to support this claim, petitioner relies on *Whitman v. Superior Court* (1991) 54 Cal.3d 1063 (*Whitman*), and *Miranda, supra,* 23 Cal.4th 340, both of which addressed issues concerning preliminary hearings, not grand jury proceedings.

In *Whitman,* the court held that although hearsay is admissible at a preliminary hearing, a finding of probable cause may not be "based on the testimony of a noninvestigating officer or 'reader' merely reciting the police report of an investigating officer." (*Whitman, supra,* 54 Cal.3d at p. 1072.) The court noted that if multiple hearsay was permitted, "substantial additional objections to the reliability of the evidence might arise." (*Id.* at p. 1074.)

In *Miranda,* an investigating officer related the confession of a nontestifying codefendant at the defendant's preliminary hearing. (*Miranda, supra,* 23 Cal.4th at p. 342.) The defendant contended that the officer's testimony was inadmissible because

20

it was "not 'ordinary' hearsay such as was involved in *Whitman*, but 'presumptive[ly] unreliab[le]' hearsay because of [the codefendant's] status as a confessed accomplice and his probable motivation to implicate defendant and exonerate himself." (*Id.* at pp. 349-350.) The *Miranda* court rejected this claim, observing that "despite its presumed unreliability, such evidence represents an accusation of criminal conduct made to a law enforcement officer and ordinarily warranting consideration in preliminary proceedings designed to determine whether formal charges should be brought." (*Id.* at p. 350.) The court specified that while its "holding may allow admission at the preliminary examination of qualified officer testimony regarding an accomplice's confession," it was left to "the magistrate in each case to decide the weight to be given to that testimony, based on such considerations as the circumstances surrounding the confession, the relative reliability of its source, and the extent to which it is corroborated." (*Id.* at p. 351.)

According to petitioner, *Whitman* and *Miranda* "provide an excellent constitutional benchmark for what evidence is sufficiently reliable to establish probable cause." However, neither *Whitman* nor *Miranda* held that uncorroborated accomplice testimony is so unreliable as to violate due process when it is used to support a finding of probable cause, and we find nothing in those cases supporting such a proposition. In particular, we find it significant that *Miranda* upheld not only the use of an accomplice's statement to support a finding of probable cause at a preliminary hearing, but the admission of such statements through the testimony of police officers. Further, that court rejected the claim that due process would be violated if an accomplice's confession, while "inherently untrustworthy hearsay," could establish probable cause at the preliminary examination. (*Miranda, supra,* 23 Cal.4th at p. 353.)

### D. Conclusions

Under the circumstances of this case, we have concluded that petitioner was entitled to seek pretrial writ review of the trial court's order denying his section 995

motion despite his failure to file the motion within 60 days of his arraignment, based on the "no opportunity" and "unaware of the issue" exceptions to section 1510. We have further concluded that uncorroborated accomplice testimony can support a grand jury indictment, and that there is no basis for concluding in this case that the accomplice testimony was so unreliable that the indictment violates petitioner's rights to due process and a fair trial. Thus, we conclude that the trial court did not err by denying petitioner's section 995 motion to dismiss the indictment.

## IV.    DISPOSITION

The petition for writ of mandate and/or prohibition is denied.

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
PREMO, ACTING P.J.

_____
MÁRQUEZ, J.

***Arteaga v. Superior Court***
**H040702**

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court |
| | Superior Court No.: 213441 |
| | |
| Trial Judge: | Hon. Griffin M. J. Bonini |
| | |
| Attorneys for Petitioner: | Kendall Dawson Wasley |
| Richard Torres Arteaga | |
| | Eric Weaver |
| | |
| Attorney for Real Party in Interest: | Jeffrey M. Laurence |
| The People | Office of the Attorney General |

*Arteaga v. Superior Court*
**H040702**